SMITH ET AL. *v.* CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

[No. 20,881. Filed May 28, 1907. Rehearing denied May 14, 1908.]

1. CORPORATIONS.—*Powers.*—*Eminent Domain.*—Corporations are creatures of statute, and their powers are conferred thereby; and they may exercise the power of eminent domain only where such right is expressly granted, and where the purpose is public, such grants being strictly construed. p. 387.

2. RAILROADS.—*Consolidation.*—*Statutes.*—Under §3971 R. S. 1881, Acts 1853, p. 105, §1, railroad companies organized in this State, were given the power to consolidate with companies organized in other states; and under §5386 Burns 1908, §3975 R. S. 1881, Acts 1853, p. 107, §1, such power was extended to companies organized after the taking effect of such former statute. p. 388.

3. SAME.—*Corporate Existence of.*—*Consolidation.*—*Filing Articles.* —An Ohio railroad company, consolidating with an Indiana railroad company, and filing the agreement of consolidation with the Secretary of State of the State of Indiana, as provided by the Ohio statute (§3381 Ohio R. S. 1881), completes such consolidation, §5375 Burns 1908, §3965 R. S. 1881, providing that a copy of the resolution authorizing consolidation shall be filed in the recorder's office of each county through which such road extends,

Smith *v.* Cleveland, etc., R. Co.—170 Ind. 382.

applying to union companies, and not to companies consolidating their capital stock. p. 392.

4. RAILROADS.—*Consolidation.—Prior Consolidation of One of the Companies.*—A consolidated railroad company may consolidate with another railroad company. p. 393.

5. SAME.—*Consolidation.—Several Companies.—Irregular Proceedings.*—Any number of railroad companies may consolidate, and though their proceedings therein may be irregular, they do not wholly invalidate the corporate existence of the consolidated company. p. 393.

6. SAME.—*Consolidation.—Intersecting Roads.—Statutes.*—Under §5335 Burns 1908, §3947 R. S. 1881, conferring upon consolidated railroad companies all of the rights, duties and privileges of the constituent companies, and §5339 Burns 1908, §3951 R. S. 1881, giving a railroad company the power to consolidate with other companies "in the continuous line," authorizes a consolidation of non-competing lines of railroad, though they intersect at a terminal point. p. 393.

7. SAME.—*Consolidation.—Interstate.—Domestic.*—The consolidation of railroads pursuant to the laws of several states creates one corporation, which is regarded as domestic in each of the states through which its lines extend. p. 394.

8. SAME.—*Consolidation.—Powers.—Duties.*—In the absence of restrictions, authority to consolidate confers upon the resultant corporation all of the rights, and imposes the duties, of the constituent corporations. p. 395.

9. SAME. — *Consolidation. — Eminent Domain.*—Consolidated railroad companies in this State have the right to exercise the power of eminent domain. p. 395.

10. SAME.—*Local Changes in Route and Grade.—Statutes.*—Under the act of 1903 (Acts 1903, p. 218, §5171 Burns 1905), authorizing local alterations along the line of a railroad for the improvement thereof, a railroad company may raise embankments in order to eliminate grades, and to do so, it may appropriate land outside of its right of way, although its predecessor had appropriated a strip of land 100 to 110 feet wide for the making of such embankment. p. 395.

11. SAME. — *De Facto. — Consolidation.—Irregularities.*—Mere irregularities in the consolidation of railroad companies do not have a greater effect than to render the consolidated company a *de facto* corporation. p. 397.

12. SAME.—*De Facto.—Eminent Domain.*—A *de facto* railroad corporation may exercise the power of eminent domain. p. 397.

13. SAME.—*Consolidation.—Evidence.*—Where an Ohio railroad company consolidated with an Indiana company, and.the certificate thereof was filed with the Secretary of State of the State of

Indiana, and such consolidated company operated its roads for seventeen years, its corporate existence cannot be attacked in a proceeding by it to appropriate lands to make a fill for the purpose of eliminating a grade, thus making its road more secure. p. 397.

14. RAILROADS. — *Consolidation.*—*Irregularities.*—*Directors.*—*Meetings.*—*Place of.*—A railroad consolidation, of Ohio and Indiana companies, effected by virtue of statutes of both states, is not void because of irregularities in the issuance of stock, and of the term, residence, number and place of meeting of the board of directors; and such matters can be inquired into only by an appropriate proceeding by the State. p. 398.

15. SAME.—*Local Improvements.*—*Changes.*—*Filing Maps.*—*Blueprint Copies.*—The filing, with the clerk, of a blue print copy of an original map and profile of the proposed local changes in the line of railroad, when shown to be authentic, is sufficient. p. 398.

16. SAME.—*Changes.*—*Eminent Domain.*—*Objections Available on Preliminary Hearing.*—In a proceeding, in eminent domain, for the appointment of appraisers to assess damages for lands appropriated for a change in a railroad right of way, the only issues allowable, before the making of such appointments, are such as either defeat or abate the right to exercise the power of eminent domain. p. 399.

17. CONSTITUTIONAL LAW.—*Eminent Domain.*—*Compensation First Paid.*—*Appeal.*—Statutes authorizing railroad companies to take possession of condemned lands after a trial and upon payment of the adjudged damages, are not unconstitutional because they authorize such taking before the final decision on appeal, such right of appeal being a matter of grace and not of right. p. 399.

18. TRIAL.—*Interrogatories to Party.*—*Railroads.*—*Eminent Domain.*—In the preliminary hearing for the appointment of appraisers in an eminent domain proceeding by a railroad company, defendants' interrogatories to such company, relating to the number, residence and place of election of such company's directors, and residence of its general officers, should be rejected, and their motion for the company to produce certain papers relating thereto, denied. p. 401.

19. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 402.

From Hendricks Circuit Court; *Thomas J. Cofer,* Judge.

Condemnation proceedings by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company against Alvah B. Smith and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Brill & Harvey* and *Samuel Ashby*, for appellants.

*L. J. Hackney, Frank L. Littleton* and *James L. Clark*, for appellee.

MONTGOMERY, J.—This is an appeal from an interlocutory order appointing appraisers, in a proceeding by appellee to condemn and appropriate lands for the purpose of making local alterations and raising the grade of the line of its railroad in Hendricks county, under an act of the legislature of 1905 (Acts 1905, p. 59, §§893-904 Burns 1905).

The complaint alleges that appellee is a corporation organized under the laws of this State authorizing the organization, construction and operation of steam railways, and is the owner and engaged in operating a line of railroad from the city of Indianapolis, through Hendricks county, to the city of St. Louis, in the state of Missouri; that appellee's line of railroad through appellants' real estate in said county is unnecessarily inconvenient and expensive to operate, by reason of unavoidable curves, grades and other causes, and will be greatly improved by straightening curves, reducing grades, raising bridges and fills, deepening cuts, and making additional tracks; that appellee's board of directors has determined that such local alterations are necessary, has resolved to make the same, and has adopted a map and profile of the proposed changes, and caused the same to be filed in the office of the clerk of the Hendricks Circuit Court; that appellant Smith is the owner of the real estate and rights particularly described to be appropriated; that the condemnation as well as appropriation of said lands is necessary for appellee's use in making said changes, and its use is necessary in widening the base and raising the fill for appellee's tracks at said point; that before commencing this proceeding appellee made an effort to purchase said lands from appellant Smith, but failed to agree with him for the purchase of the

same for the purposes aforesaid, and has been and is now unable to agree with him for such purchase.

Appellants filed twenty-six objections to the complaint, of which those numbered from eight to twenty-five, inclusive, were stricken out upon appellee's motion. The cause was heard by the court upon the complaint and appellants' objections 1, 2, 3, 4, 5, 6, 7 and 26, and a finding made to the effect that the complaint is true, and none of such objections well taken, and thereupon appraisers were appointed.

It is charged upon this appeal that the court below erred in striking out each of appellants' objections numbered from eight to twenty-five, inclusive; in striking out interrogatories one to twenty-two, inclusive, propounded by appellants to be answered by appellee; in refusing to require appellee to produce books and papers called for in appellants' application therefor by specifications two to twelve, inclusive; in overruling appellants' objections to the complaint, numbered 1, 2, 3, 4, 5, 6, 7 and 26; in holding that appellee had the right to condemn the tracts of land described in the amended complaint; in appointing appraisers; in admitting in evidence over objection appellee's exhibits two to ten, inclusive; in permitting witnesses to answer certain questions over appellants' objection; and, finally, that the order appointing appraisers is not sustained by sufficient evidence and is contrary to law.

Appellants' objections to the complaint averred that (1) the court had no jurisdiction of the subject-matter, or of the person of appellant; (2) and (3) that appellee had no right to exercise the power of eminent domain for the use sought, or for any use or purpose; (4) that appellee is not a railroad corporation duly organized under the laws of this State; (6) and (7) that before the filing of the complaint appellee had not made a map and profile of the route intended to be adopted, and caused the same to be certified by a majority of its board of directors and filed in the office

of the clerk of the Hendricks Circuit Court; (26) that the complaint does not state facts sufficient to constitute a cause of action and to entitle appellee to exercise the power of eminent domain for the use sought, and entitle it to the relief prayed.

In presenting the questions for consideration to this court, appellants' counsel have grouped in one class the alleged errors in overruling appellants' objections to the complaint, in holding the evidence sufficient to authorize appellee to condemn and appropriate the property involved, and in making the interlocutory order appointing appraisers. For convenience we will follow in argument substantially the order thus adopted.

Appellants' counsel correctly state propositions of law to the effect that corporations are creatures of statute, with no powers except those conferred by law; that the right

1. to exercise the power of eminent domain is a sovereign power of the State, which may be exercised only by a person or corporation to whom it has been expressly granted, and for a public use, and that such grants are strictly construed.

It appears from the evidence that in the year 1868, the Cleveland, Columbus & Cincinnati Railroad Company and the Bellefontaine Railroad Company were consolidated under a law of the state of Ohio, passed March 30, 1851, and took the name of the Cleveland, Columbus, Cincinnati & Indianapolis Railway Company, the line of such consolidated company extending from Cleveland to Indianapolis. Articles of incorporation for the Indianapolis & St. Louis Railroad Company were filed in the office of the Secretary of State of the State of Indiana on August 31, 1867. This road extended from Indianapolis to the state line at Terre Haute. The road was sold upon a decree of foreclosure to E. B. Thomas, and he, with fifteen others, formed a railroad corporation, in pursuance of the act of March 3, 1865 (§§5333-5339 Burns 1908, §§3945-3951 R. S. 1881),

taking the name of the Indianapolis & St. Louis Railway
Company. This company and the consolidated company
named, on March 19, 1889, entered into an agreement of con-
solidation with the Cincinnati, Indianapolis, St. Louis &
Chicago Railway Company, an Indiana corporation, whose
line of railroad extended from Cincinnati to Lafayette,
whereby the appellee was formed under the name of the
Cleveland, Cincinnati, Chicago & St. Louis Railway Com-
pany. This agreement of consolidation was filed in the of-
fice of the secretary of state of the state of Ohio, June 7,
1889, and in the office of the Secretary of State of the State
of Indiana, June 8, 1889.

The right of a railroad company, organized in this State,
to consolidate with another, organized in an adjoining state,
was given by the following statute: "Any railroad
company heretofore organized under the general or
special laws of this State shall have the power to in-
tersect, join, and unite its railroad with any other railroad
constructed or in progress of construction in this State or in
any adjoining state, at such point on the state line or at any
other point as may be mutually agreed upon by said com-
panies; and such railroad companies are authorized to
merge and consolidate the stock of the respective companies,
making one joint stock company of the two railroads thus
connected, upon such terms as may be by them mutually
agreed upon, in accordance with the laws of the adjoining
state with whose road or roads connections are thus formed:
Provided, their charters authorize said railroads to go to
the state line or to such point of intersection." Acts 1853,
p. 105, §1, §3971 R. S. 1881. The right of consolidation so
given applies to railroads organized after, as well as before,
the enactment of the original statute. Acts 1853, p. 107, §1,
§5386 Burns 1908, §3975 R. S. 1881.

The statutes of Ohio under which these consolidations
were effected read as follows: "§3379. When the lines
of road of any railroad companies in this state, or any por-

tion of such lines, have been or are being so constructed as to admit the passage of burthen or passenger-cars over any two or more of such roads continuously, without break or interruption, such companies may consolidate themselves into a single company.

"§3380. A company organized in this state, whose line of road is made, or is in process of construction, to the boundary line of the state, or to any point either in or out of the state, may consolidate its capital stock with the capital stock of any company in an adjoining state, organized for a like purpose, and whose line of road has been projected, constructed or is in process of construction to the same point where the several roads so united and constructed will form a continuous line for the passage of cars; and roads running or to be constructed to the bank of a river which is not bridged, shall be held to be continuous under this section.

"§3381. The consolidation shall be made under the conditions and restrictions following: (1) The directors of the several companies may enter into a joint agreement, under the corporate seal of each company, for the consolidation of the companies, and prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new company, the number of directors and other officers thereof, and their places of residence, the amount of the capital stock of the new company agreed upon, the number of shares of capital stock, the amount of each share and the manner of converting the capital stock of each of the constituent companies into that of the new company, with such other details as they may deem necessary to perfect the new organization and the consolidation of the companies. (2) The agreement shall be submitted to the stockholders of each of the companies, at a meeting thereof called separately for the purpose of taking the same into consideration; due notice of the time and place of holding such meeting, and the object thereof, shall be given by written or printed notices addressed to each of the persons in

whose names the capital stock of the companies stands on the books thereof, and also by a like notice published in some newspaper in the city or town where such company has its principal office or place of business: Provided, that in case all the stockholders are present at such meeting, in person or by proxy, such notice may be waived in writing. At the meeting of stockholders the agreement of the directors shall be considered, and a vote by ballot taken for the adoption or rejection of the same, each share of stock on which has been paid all the instalments called for by the board of directors, entitling the holder thereof to one vote; the ballots shall be cast in person or by proxy, and if two-thirds of all the votes cast at the meeting be for the adoption of the agreement that fact shall be certified thereon by the secretary of each of the companies, and the agreement so adopted, or a certified copy thereof shall be filed in the office of the secretary of state. And all consolidation agreements heretofore entered into and ratified by such companies substantially in manner as in this section prescribed, shall be as valid as if entered into and ratified by virtue of this section.

"§3382. When the agreement is made and perfected, as provided in the preceding section, and the same or a copy thereof filed with the secretary of state, the several companies parties thereto shall be deemed and taken to be one company, possessing within this state, all the rights, privileges, and franchises, and subject to all the restrictions, disabilities and duties, of a railroad company.

"§3383. The stockholders at the meeting called to take into consideration the agreement, shall, after the adoption of the same, appoint a time and place for the election of the directors and other officers of the new company, notice of which shall be given by the secretary of each of the companies in some newspaper printed, or of general circulation, at the place of the principal office of each company, at least three weeks previous thereto; provided, that if at such meeting all the stockholders of the constituent companies are

present, either in person or by proxy, they may, in writing or by resolution, waive such notice, and consent to hold such meeting and election at any time, which election shall be conducted in such manner as may be prescribed by the stockholders at such meeting.

"§3384. Upon the election of the first board of directors of the company created by the agreement of consolidation, all and singular the rights, privileges, and franchises of each of the companies to the agreement, and all the property, real, personal, and mixed, and debts due on account of subscriptions of stock, or other things in action, shall be deemed to be transferred to and vested in such new company, without further act or deed; all property, rights of way, and other interests, shall be as effectually the property of the new company as they were of the companies parties to the agreement; the title to real estate, either by deed, gift, grant, or by appropriations under the laws of this state, shall not be deemed to revert or be impaired by reason of the consolidation; but all rights of creditors, and all liens upon the property of either of such companies, shall be preserved unimpaired, and the respective companies may be deemed to be in existence to preserve the same; and all debts, liabilities, and duties of either of said companies, shall thenceforth attach to the new company, and be enforced against it to the same extent as if such debts, liabilities, and duties had been contracted by it.

"§3385. The new company shall, as soon as convenient after the consolidation, establish a principal office, at some point in this state on the line of its road, and may change the same at pleasure; but public notice of such establishment or change shall be given in some newspaper.

"§3386. Suits may be brought and maintained against the new company in the courts of this state, for all causes of action, in the same manner as against other companies.

"§3391. A copy of the agreement and act of consolidation, duly certified by the secretary of state, shall be received

in the courts of this state as *prima facie* evidence of the existence of the several companies parties to the agreement prior to and at the time of the execution of the agreement, of the consolidation of the companies as specified in the agreement, that such consolidation was authorized by the laws of the several states within which the several companies were chartered, and into which the consolidation road extends, and of all and singular the facts, statements, and covenants set forth and received in the agreement and act of consolidation, and in the certificates indorsed thereon.

"§3392.   It shall not be necessary to produce or prove the charters of the companies parties to such consolidation, the laws of the several states under and by virtue of which such consolidation was affected, or the original articles of consolidation, in any suit brought to charge such consolidated company with any liability of either of the companies parties to the act of consolidation, any law or custom to the contrary notwithstanding." 1 Ohio Revised Statutes 1881.

It is insisted that appellee has no legal corporate existence, for the reason that a copy of the resolution authorizing consolidation was not filed in the office of the recorder 3.   of each county through which the road extends, as required by §5375 Burns 1908, §3965 R. S. 1881.   This provision relates only to the union of two roads under a common name for the purposes of operation within this State, and not to a consolidation of the capital stock of the companies.   The filing of the agreement of consolidation in the office of the Secretary of State of the State of Indiana, as directed by the Ohio statute, was certainly all that was required of consolidating companies. *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134; *Leavenworth* v. *Chicago, etc., R. Co.* (1890), 134 U. S. 688, 10 Sup. Ct. 708, 33 L. Ed. 1064; *Trester* v. *Missouri Pac. R. Co.* (1891), 33 Neb. 171, 49 N. W. 1110.

It is further argued that one of the constituent companies out of which appellee was created, being the product of a

prior consolidation, was not authorized to enter into 4. a second agreement of consolidation. This proposition is not tenable. By the terms of the statute the consolidation effected a complete merger of the stock of the constituent companies, thereby making ''one joint stock company.'' This new company thus created came as clearly within the provisions of the statute as if organized by articles of incorporation. The power of consolidation conferred by the statute is not exhausted by a single exercise. *Jones* v. *Missouri-Edison Electric Co.* (1905), 135 Fed. 153.

The statute speaks of the making of one joint stock company of the ''two'' roads thus connected, and from this expression it is contended that an agreement of con- 5. solidation made by three corporations is unauthorized and void. The right to enter into more than one consolidation disposes of this contention. It could make no substantial difference whether the consolidation by which appellee was formed was accomplished by successive acts or by one concurrent agreement. If the procedure for consolidation were conceded to be irregular, it would not make the result void. Section 5382 Burns 1908, Acts 1893, p. 181, §1, impliedly concedes the right of more than two parties to enter into an agreement of consolidation.

It is next contended that the railroad act of 1865, *supra,* prohibited a company organized in pursuance of its provisions from consolidating with another company 6. whose road intersected or crossed its road, and which had theretofore been constructed and operated; that the Indianapolis & St. Louis Railway Company was organized under that act; that its road was intersected at Indianapolis by the other two roads, which were fully constructed and in operation at the time of consolidation, and therefore that it was forbidden to consolidate with such companies. The act in question conferred upon corporations formed thereunder, all the powers, rights, privileges, immunities and franchises in respect to the road so purchased, that were

possessed or enjoyed by the corporation that owned or held such railroad previous to the sale.. §5335 Burns 1908, §3947 R. S. 1881. It was further provided that any such corporation should have ''power to consolidate with other railroad corporations in the continuous line, either within or without this State, upon such terms as may be agreed upon by the corporations owning the same.'' §5339 Burns 1908, §3951 R. S. 1881. The manifest purpose of the provision prohibiting consolidations was to prevent the absorption of competing lines. In our opinion the contiguity or intersection at a terminal point of the roads consolidated did not come within the prohibition of the statute, but the consolidated lines were so far continuous as to fall within the authority to consolidate authorized by this act.

The consolidation of two or more corporations pursuant to the laws of different states results in the formation of one corporation, which is regarded as a domestic corporation in each of the states whose laws are followed in effecting such consolidation. *Eaton, etc., R. Co. v. Hunt* (1863), 20 Ind. 457; 1 Elliott, Railroads (2d ed.), §339; 3 Wood, Railroads (2d ed.), §487; 3 Cook, Corporations (4th ed.), §910; 3 Purdy's Beach, Priv. Corp., §1278; Taylor, Priv. Corp. (4th ed.), §406; 10 Cyc. Law and Proc., 294; *Ohio, etc., R. Co. v. People, ex rel.* (1888), 123 Ill. 467, 14 N. E. 874; *Angier v. East Tenn., etc., R. Co.* (1885), 74 Ga. 634; *Day v. New Orleans, etc., R. Co.* (1885), 37 La. Ann. 131; *In re St. Paul, etc., R. Co.* (1886), 36 Minn. 85, 30 N. W. 432; *State, ex rel., v. Keokuk, etc., R. Co.* (1889), 99 Mo. 30, 12 S. W. 290, 6 L. R. A. 222; *Trester v. Missouri Pac. R. Co., supra; Sage v. Lake Shore, etc., R. Co.* (1877), 70 N. Y. 220; *Ashley v. Ryan* (1892), 49 Ohio St. 504, 31 N. E. 721; *Commonwealth, ex rel., v. Atlantic, etc., R. Co.* (1866), 53 Pa. St. 9; *Trenton St. R. Co. v. United, etc., Canal Co.* (1900), 60 N. J. Eq. 500, 47 Atl. 819; *Graham v. Boston, etc., R. Co.* (1886), 118 U. S. 161, 6 Sup. Ct. 1009, 30 L. Ed. 196; *St. Louis, etc., R. Co. v.*

*James* (1896), 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802;
*Burger* v. *Grand Rapids, etc., R. Co.* (1884), 22 Fed. 561;
*Paul* v. *Baltimore, etc., R. Co.* (1890), 44 Fed. 513; *Fitz-
gerald* v. *Missouri Pac. R. Co.* (1891), 45 Fed. 812; *Missouri
Pac. R. Co.* v. *Meeh* (1895), 69 Fed. 753, 16 C. C. A. 510, 30
L. R. A. 250; *Winn* v. *Wabash R. Co.* (1902), 118 Fed. 55.

In the absence of restrictions, authority to consolidate con-
fers upon the resultant corporation all the powers, fran-
chises, rights, obligations and duties of the constit-
uent companies. *Indianapolis, etc., R. Co.* v. *Jones*
(1868), 29 Ind. 465, 95 Am. Dec. 654; *Jeffersonville,
etc., R. Co.* v. *Hendricks* (1872), 41 Ind. 49; *Scott* v. *Han-
sheer* (1883), 94 Ind. 1; *Cashman* v. *Brownlee* (1891), 128
Ind. 266; *Cleveland, etc., R. Co.* v. *Prewitt* (1893), 134 Ind.
557; 3 Purdy's Beach, Priv. Corp., §1283.

A consolidated railway company has a right to exercise
the power of eminent domain, if the constituent companies
had that power, and may prosecute to final judgment
condemnation proceedings instituted by one of the
constituent companies before consolidation. *Union
Traction Co.* v. *Basey* (1905), 164 Ind. 249; *Trenton St. R.
Co.* v. *United, etc., Canal Co., supra; Trester* v. *Missouri
Pac. R. Co., supra.*

The contemplated alterations in the line of appellee's road
were to be made in pursuance of the following act: "If at
any time after the location of the line of any railroad,
chartered by this State, and the filing of the map
thereof, it shall appear to the directors of such com-
pany that the line thereof is unnecessarily dangerous, incon-
venient or expensive to operate, by reason of unavoidable
causes, grades or serious errors in location, such directors
may make local alteration of the line, and cause a new map
to be filed in the office where the map showing the first loca-
tion is filed, and may thereupon take possession of the lands
embraced in such new location which may be necessary for
the construction and maintenance of such road on such

altered line, either by agreement of the owner or by such proceedings as are authorized by the charter of such company, and may use such new line in place of the one for which it is substituted. But nothing in this act shall be so construed as to confer upon such railroad company any power to locate its road on any route which would not have been authorized by its charter; and nothing in this act contained shall authorize such company to make a location of its track within any city without the consent of the common council of such city, nor to change its road so as to avoid any point named in its charter: Provided, further, that in all cases where any railroad company has heretofore, or may hereafter, make any such alterations as are provided for in this act the board of county commissioners of the county in which such alterations are made may locate a public highway on the old line or route of such railroad for which such new line is substituted, by the same proceedings and on the same terms as public highways are now, or may be hereafter located." Acts 1903, p. 218, §5171 Burns 1905.

Appellants' counsel contend that the improvements planned by appellee, as disclosed by the evidence, are not local, but general in character, and for that reason the appropriation of appellants' land should be denied. The lands sought to be taken in this proceeding are for the purpose of widening and raising an embankment and thereby eliminating a grade in the road. This particular taking is manifestly for a local improvement, and clearly authorized both by the act of 1903, *supra,* and by appellee's general charter powers. Railroad companies are not authorized to lay out their roads in general exceeding six rods wide, but, for the purpose of "cuttings, embankments, and procuring stone and gravel," they may take as much more lands, within the limits of their charter, as may be necessary for the proper construction and security of the roads. §5195 Burns 1908, cl. 4, §3903 R. S. 1881; 2 Elliott, Railroads (2d ed.), §973.

The circumstances that appellee's predecessor has hereto-

fore appropriated a strip of land from one hundred to one hundred ten feet in width for the purpose of constructing a fill or embankment upon the tract now owned by appellant does not debar appellee from appropriating lands to an additional width for the purpose of raising such embankment so as to make it answer the present requirements of the company's needs. *Peck* v. *Louisville, etc., R. Co.* (1885), 101 Ind. 366, 371; *Prather* v. *Jeffersonville, etc., R. Co.* (1875), 52 Ind. 16, 42.

It is earnestly insisted by appellants' counsel that appellee is shown to be, at best, only a *de facto* railroad corporation, and that as such it is without authority to exercise 11. the power of eminent domain. If it be conceded that the proceedings to consolidate were in any respect irregular, yet the result would be to constitute appellee a *de facto* corporation. *Bradford* v. *Frankfort, etc., R. Co.* (1895), 142 Ind. 383, 393; *Trenton St. R. Co.* v. *United, etc., Canal Co., supra.*

The insistence that a *de facto* railroad corporation has no right to exercise the power of eminent domain cannot be sustained. This court has recently declared the contrary doctrine, and upon a reëxamination of the question we are satisfied that our decision is in accord with the greater weight of authority, and now reaffirm that holding. *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511, and cases cited.

The evidence shows a substantial, if not a literal, compliance with the law authorizing consolidation of railroads resulting in the corporate existence of appellee, and 13. that for about seventeen years it has continuously exercised the rights and functions of a railroad corporation as a common carrier of freight and passengers. The corporate existence of appellee is so far *de jure* as to repel the attack of appellant. *Marion Bond Co.* v. *Mexican Coffee & Rubber Co.* (1903), 160 Ind. 558; *Doty* v. *Patterson* (1900), 155 Ind. 60; *Crowder* v. *Town of Sullivan* (1891),

128 Ind. 486, 13 L. R. A. 647; *Atchison, etc., R. Co.* v. *Board, etc.* (1893), 51 Kan. 617, 33 Pac. 312; *Pape* v. *Capitol Bank, etc.* (1878), 20 Kan. 440, 27 Am. Rep. 183; *City of St. Louis* v. *Shields* (1876), 62 Mo. 247; Cooley, Const. Lim., 254.

The statute under which this consolidation was effected provided that such consolidation might be made "upon such terms as may be by them mutually agreed upon, in accordance with the laws of the adjoining state with whose road or roads connections are thus formed." The consolidation was made with special reference to and in conformity with the statutes of Ohio. The objections of appellant with regard to the amount of capital stock issued per mile, the number, term, place of residence and of meeting of the board of directors are therefore all matters not governed wholly by the laws of this State, and if confessedly irregular may be inquired into only by the State in an appropriate proceeding. *Williams* v. *Citizens R. Co.* (1891), 130 Ind. 71, 15 L. R. A. 64, 30 Am. St. 201; *Barren Creek Ditching Co.* v. *Beck* (1884), 99 Ind. 247; *Logan* v. *Vernon, etc., R. Co.* (1883), 90 Ind. 552; *Brown* v. *Calumet River R. Co.* (1888), 125 Ill. 600, 18 N. E. 283; *National Docks R. Co.* v. *Central R. Co., etc.* (1880), 32 N. J. Eq. 755; *Reisner* v. *Strong* (1880), 24 Kan. 410; *Elizabeth City Academy* v. *Lindsey* (1846), 28 N. C. 476, 45 Am. Dec. 500.

Appellee filed in the office of the clerk of the Hendricks Circuit Court a blue print of the map and profile of the proposed changes to be made in its road, and of the certificate thereto subscribed by a majority of its board of directors, instead of the original, and this is made the ground of an attack upon this proceeding. The map, profile and certificate were shown to be authentic and correct, and binding upon the company, and this objection is without substantial merit.

Objections 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23 and 25, stricken out on appellee's motion, charged that

certain meetings of appellee's stockholders and directors were not held within this State; that the proposed change in the road and the map and profile thereof were not authorized; that no law of this State authorized the filing of the agreement of consolidation in the office of the Secretary of State; that a copy of the resolution of consolidation was not filed with the recorder of each county through which the road passes; that appellee has no right to exercise the power of eminent domain, for the reason that the management and ownership of its road are in another corporation; that a foreign corporation or a *de facto* corporation cannot exercise such power in this State; that the present line of road is not unnecessarily inconvenient; that appellee cannot appropriate land exceeding six rods in width; that no map or profile, but only a blue print or copy, was filed with the clerk; that appellee did not make an honest effort to agree with appellants for the purchase of the land which it seeks to condemn.

These propositions have been sufficiently disposed of in the preceding part of this opinion. It is apparent that they were in part argumentative denials of facts which appellee must affirm and prove, and in part matters which only the State could plead in a direct proceeding, and which were in nowise sufficient to defeat or abate appellee's right to appropriate the property described in the complaint. The only issues allowable upon this preliminary hearing are such as go to defeat or abate the asserted right to exercise the power of eminent domain. *Vandalia Coal Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 144; *Morrison* v. *Indianapolis, etc., R. Co., supra.* It follows that no error was committed in striking out any of these objections.

Objections fifteen, sixteen and twenty-four averred that the statute of 1905 (Acts 1905, p. 59, §§893-904 Burns 1905), upon which this proceeding was founded, is unconstitutional, for the reason that section five (§897, *supra*) authorizes appellee to take possession of ap-

pellants' real estate before the matters in controversy are determined upon appeal, in violation of §§12, 21, and 24, article 1, of the Constitution of Indiana, and §10, article 1, and §1 of the 14th amendment to the Constitution of the United States.

In *Consumers Gas Trust Co.* v. *Harless* (1892), 131 Ind. 446, 15 L. R. A. 505, this court said at page 451: "The right of eminent domain is limited only by the Constitution, and the only limitation in this State is, that no man's property shall be taken by law without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." See, also, *Aurora, etc., R. Co.* v. *Miller* (1877), 56 Ind. 88. The statute in question does not deny, but seeks to secure, this right, by making ample provision for the assessment, recovery and payment of all damages before actual possession is taken. A right of appeal is not an inherent right of the citizen, and may be granted or withheld at the pleasure of the legislative department of the State. When the State finds it expedient for the public good to delegate its sovereign authority, and clothe a citizen or creature of the law with such extraordinary power as the right of eminent domain, it would appear impolitic and unseemly that its exercise should be indefinitely stayed during vexatious litigation. The right of appeal from the interlocutory order, the right to an appraisement of damages and an appeal from such awards, the right to a trial by jury upon questions connected therewith, and a guaranty of payment before the passing of title afford every requirement of due process of law, and we perceive no plausible reason for the contention that the statute impairs the obligations of a contract or violates any of the constitutional guaranties invoked by appellant. There was clearly no error in rejecting these paragraphs as affirmative pleadings.

Appellants filed twenty-two interrogatories, to be answered by appellee, relating to the number, residence and

place of election of appellee's directors, the names and places of residence of the general officers, and various other facts occurring subsequent to the act of consolidation. The interrogatories were stricken out. The preliminary hearing out of which this appeal arises is a special proceeding of a somewhat summary character. The hearing may be had before the judge in vacation, as well as in open court. Pleadings and dilatory motions such as are authorized and appropriate in civil causes are manifestly improper. The statute expressly says that no pleadings other than the complaint and written objections thereto, if any, filed by the defendant, shall be allowed. The issues authorized are to conserve public interests as much as individual rights, and the plaintiff must satisfy the court or judge of its right to exercise the power of eminent domain for the use sought, and of the regularity of the proceedings, before proceeding to the assessment of private damages. The interrogatories tendered were not proper and the court rightly rejected them. *Simons* v. *Simons* (1886), 107 Ind. 197, 198; *Barr* v. *Barr* (1869), 31 Ind. 240.

Appellants also filed a verified motion to require appellee to produce certain papers and records, as set forth in twelve specifications. The court sustained the motion as to the first and fourth of such items, and overruled it as to the remaining paragraphs. The first related to the articles of association of the Indianapolis & St. Louis Railroad Company, and the fourth to the consolidation agreement. These items·of evidence were material to the issues, and were properly required, and doubtless would have been produced by appellee without regard to this motion. The other records demanded were in line with the rejected objections and interrogatories filed by appellants, and were not relevant or material, for the reasons and upon grounds before stated, and the court properly denied such parts of the motion, assuming, without deciding, that the motion itself

was allowable. Appellants' objections to the various items of evidence were upon grounds already considered, and of a technical character. This opinion need not be prolonged, since the rulings announced dispose of all of the remaining questions arising in connection with the admission of the evidence.

There was some controversy in the evidence as to whether a proper effort was made by appellee to purchase from appellants the lands and rights sought to be appropriated. We cannot disturb the finding upon this question.

We find no irregularity or error justifying a disturbance of the result reached by the court below. The judgment is affirmed.