## WILLIAMSON *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

[No. 23,865.   Filed November 11, 1920.   Rehearing denied March 10, 1921.]

1. RAILROADS.—*Consolidation.—Stockholder's Right of Inquiry.* —In an action by an Illinois railroad company, which has purchased stock of a connecting railroad of this state under Hurd's R. S. Ill. 1913, §14, ch. 114, against a stockholder from whom it purchased stock, the court has the power to inquire whether it has discharged its duty to such stockholder imposed by the statute, the right to make such inquiry not being limited to the state of Illinois by *quo warranto* proceedings.   p. 247.

2. RAILROADS. — *Consolidation.* — *Stockholder's Acceptance of Proposition to Purchase Stock.—"Offer" to Sell Stock.*—Where an Illinois railroad company acquired stock of a connecting railroad of this state under Hurd's R. S. Ill. 1913, §14, ch. 114, providing that the Illinois company acquiring such stock shall purchase all stock that might be "offered" at the same terms to all stockholders, a stockholder of the Indiana company who sells on the purchasing railroad's proposition is entitled to the same price paid to other stockholders who offer their stock for sale.   p. 247.

3. RAILROADS.—*Consolidation.—Purchase of Stock Under Foreign Statute.*—Where an Illinois railroad company acquired stock of a connecting railroad company of this state under Hurd's R. S. Ill. 1913, §14, ch. 114, it cannot evade its legal duty imposed by that statute in an action against a stockholder, from whom it purchased stock, in an Indiana court, on the ground that the sale of stock was controlled by the laws of Indiana, and not Illinois, since the purchase was made under the sole authority of such statute.   p. 248.

4. RAILROADS.— *Consolidation.— Statutes.— Acquisition of Stock on "Same Terms".*—Where an Illinois railroad company acquired stock of a connecting railroad in this state under Hurd's R. S. Ill. 1913, §14, ch. 114, authorizing such acquisition and providing that the purchase of all stock that may be offered shall be on the "same terms of purchase" to all stockholders, the Illinois company was required to pay each stockholder from whom it purchased stock at the same time the same price, the word "terms" including price.   p. 248.

5. RAILROADS.—*Consolidation.—Purchase of Stock.—Violation of Statute.—Estoppel.*—Where an Illinois railroad company purchased the stock of a connecting railroad in Indiana under Hurd's R. S. Ill. 1913, §14, ch. 114, requiring the Illinois com-

pany to purchase the stock on the same terms to all stockholders, a stockholder in the Indiana company who sold his stock was not, by reason of his competency to make the contract of sale, estopped to deny that he was bound thereby, but could show that the buyer had not complied with the statute as regards the price paid for his stock. p. 248.

6. RAILROADS.—*Consolidation.—Purchase of Stock.—Contract of Sale.—Estoppel.—Pleading.*—In an action by an Illinois railroad company against a stockholder of a connecting railroad in this state, the stock of which was acquired by the Illinois company under Hurd's R. S. Ill. 1913, §14, ch. 114, the Illinois company, in order to avail itself of the defense that the stockholder was estopped from claiming that his stock was not purchased on the same terms as that acquired from other stockholders, as required by such statute, was required to plead such estoppel. p. 249.

7. STATUTES.—*Construction.—Ambiguous Statutes.*—While an act of the legislature that is too plain to admit of construction must be accepted and enforced by the courts as it was written, the courts will give a doubtful or ambiguous statute a construction, if possible, which will not lead to inequitable results. p. 251.

8. RAILROADS.—*Consolidation.—Statute.—Purchase of Stock.— Same "Terms of Purchase".*—Hurd's R. S. Ill. 1913, §14, ch. 114, authorizing an Illinois railroad company to acquire stock of a connecting railroad of another state and providing that it shall purchase all stock of such connecting carrier that is offered on the same terms to all stockholders, does not give a stockholder the right to refuse to sell a portion of his shares at the time the Illinois company acquires most of the stock of the connecting carrier, and hold them for a period of years thereafter, until they have lost part or all of their value, and then turn them over to the purchasing company for the full price which was refused for the shares in the first instance. p. 251.

From Gibson Circuit Court; *S. L. Vandeveer,* Judge.

Action by the Illinois Central Railroad Company against Joel Williamson. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Cunningham & Ortmeyer, P. W. Frey, John W. Spencer, John D. Welman, Tracewell & Tracewell, John W. Spencer, Jr., Merritt H. Perkins* and *Val Nolan,* for appellant.

*John G. Drennan, W. D. Robinson, W. E. Stilwell* and *Oscar M. Welborn,* for appellee.

EWBANK, J.—Appellee recovered judgment on a $4,000 promissory note executed by appellant December 9, 1909. Appellant's demand on a counterclaim was denied. The parties agree that a proper construction of a certain section of a statute of the State of Illinois providing for the organization of railroad corporations and kindred matters, in force from and after June 2, 1891, if applicable, solves the principal problems involved in this appeal. These problems are presented here chiefly by exceptions to the overruling of appellant's motion for a new trial by which the sufficiency of the evidence was challenged. Such section of the Illinois statute is as follows: "The stock of such corporation shall be deemed personal estate and shall be transferable in the manner prescribed by the by-laws of such corporations. But no shares shall be transferable until all previous calls thereon shall have been paid; and it shall not be lawful for such corporation to use any of the funds thereof in the purchase of its own stock, or that of any other corporation, or to loan any of its funds to any director or other officer thereof, or to permit them or any of them to use the same for other than the legitimate purposes of such corporation: *Provided,* however, that any railroad company incorporated and organized, or that may hereafter be incorporated and organized under any general or special law of this state, and operating a railroad which now connects or hereafter may connect at any point with any railroad of any other state, shall have power, acting by itself, or jointly with another company or companies to own and hold the stock and securities of the corporation owning said connecting road, or any part

thereof; such ownership or holding to comprise at least two-thirds in amount of the stock of such corporation; but in case of the purchase of stock the company or companies so purchasing shall take and pay for all the shares of the company whose stock is so purchased that may be offered, and the terms of purchase of all shares shall be the same to all stockholders." §14, ch. 114, Hurds' R. S. of Ill. 1913.

The facts presented by the pleadings and established by the evidence without material conflict are substantially as follows:. On June 7, 1904, prior thereto and thereafter, appellee, a railroad corporation organized under the laws of Illinois, owned and operated a railroad from Chicago southward through Effingham, Illinois. It owned also all the capital stock of the Illinois and Indiana Railroad Company, a consolidated railroad corporation existing as such under and by virtue of the laws of Illinois and Indiana, and which operated a railroad from Effingham eastward to Switz City, Indiana, connecting with appellee's railroad at the former point. The Indianapolis Southern Railway Company, a railroad corporation organized under the laws of Indiana, and capitalized at $2,000,000, consisting of 20,000 shares of $100 each, owned and operated a railroad from Indianapolis southward to Switz City, connecting with the railroad of the Illinois and Indiana Company at the latter point. On June 7, 1904, appellee and the Indianapolis Southern Railway Company entered into a written contract preliminary to the consolidation of the latter and the Illinois and Indiana Railroad Company, as the Indianapolis Southern Railroad Company, and stipulating that the capital stock of the consolidated company thus to be formed should consist of 20,000 shares of $100 each, fifty-one per cent. of which should be issued to appellee on the consummation and by reason of the consolidation, and that

forty-nine per cent. of the stock in the consolidated company thus to be formed (9,700 shares) should be distributed to the stockholders of the Indianapolis Southern Railway Company in proportion to their respective holdings in that company. That on or before November 25, 1904, each of such stockholders might, at his election and on prior notice to appellee, sell to appellee one-half of his prospective holdings in the proposed consolidated company, at the rate of $20 per share, and that appellee should purchase at that rate on the exercise of the right to elect to sell, and notice, as aforesaid; that in the event any of such stockholders failed to elect as stipulated, other stockholders might make up the deficiency by electing to sell more than one-half of their said prospective holdings, in order that appellee might purchase the full one-half of such forty-nine per cent if offered, the deficiency above mentioned to be distributed ratably among those electing to sell more than one-half of their said holdings.

The articles of consolidation were executed, and thereafter appellee purchased of some of the holders of the forty-nine per cent. at $20 per share a sufficient number of shares to constitute it the owner of the two-thirds required by the statute. Under the consolidation arrangement appellant's stock in said company amounted to 1,960 shares, one-half of which, or 980 shares, he elected to sell, and did sell, to appellee under such arrangement, at $20 per share. Some of the stockholders declining to sell, appellant sold to appellee an additional block of 480 shares at $20, retaining 500 shares, but the appellee did not then acquire the full one-half of the forty-nine per cent. of minority stock, purchasing only 2,454 shares at that time, or 2,046 less than one-half of the forty-nine per cent.

All of said 2,454 shares so sold to appellee were purchased by appellee of the respective holders at or about

the expiration of the time limited by the contract, viz., November 25, 1904. Appellee at that time did not offer to buy of appellant, and appellant did not offer to sell to appellee, any of his remaining 500 shares, except as said contract bound appellee to buy any shares offered, up to half of forty-nine per cent. of the stock. Prior to the fall of 1909 appellee became the owner of the entire issue of certain bonds executed by the consolidated company secured by a mortgage on its property. The bonds amounted to $10,000,000 par value.

In the fall of 1909 appellee entertained a purpose to acquire the road and property of the consolidated company, assigning as a reason that the road was not being operated profitably. To that end it determined to foreclose the mortgage securing the bonds, on which the interest was in default. In order that there might be no contest in the foreclosure proceedings, it determined, if possible, to purchase the minority stock, amounting to 6,246 shares, held as follows: The Van Camps 3,258 shares; Parry, 1,047 shares; Stevenson, 1,047 shares; appellant 500 shares; other parties the remainder. Of the minority stockholders the Van Camps did not sell any of their holdings in the transactions preliminary to the consolidation in 1904, while appellant, as we have said, sold 480 shares more than his half of his holdings at that time. In the fall of 1909 appellee commenced negotiations to purchase all the minority stock, offering $5.426 per share, and holding out as an alternative the enforced foreclosure of the mortgage by which the minority stock would become worthless. On October 30, 1909, appellee purchased the stock of all of the minority stockholders other than the Van Camps and appellant, paying therefor $5.426 per share. Meeting with some difficulty in the purchase of the Van Camp stock, appellee on November 23, 1909, extended to them the option of 1904, and thereupon purchased the one-

half of their stock (1,629 shares) at $20 per share, and the remaining half at $5.426 per share. In other words, it paid them $41,418.95 for their 3,258 shares. Meanwhile appellee had been negotiating with appellant for the purchase of the remaining 500 shares held by him. In the course of the negotiations appellant agreed in general terms to sell at the same price paid to other minority stockholders. As appellee acquired the successive blocks of stock as above indicated, it informed appellant, stating the price paid. Shortly after purchasing the Van Camp stock, appellee informed appellant that the stock had been purchased, and stated to him the price paid, explaining to appellant that $20 per share had been paid for one-half of the Van Camp stock and $5.426 per share for the other half to place those owners on an equality with the stockholders who sold one-half of their holdings in 1904. Meanwhile appellee had offered to pay appellant $6 per share for his 500 shares. At this stage of the negotiations uncertainty arose as to whether appellant in fact owned the stock. It had been pledged to a bank for some time for a $7,000 debt of appellant.

On December 9, 1909, appellant and appellee entered into a contract approved by the bank, by which appellant agreed to procure and sell to appellee the certificate representing the 500 shares, and to execute to appellee his note for $4,000, running three years, payable to appellee, it being the note in suit. In performing this contract appellant procured the certificate of stock from the bank and transferred it to appellee, and also executed to appellee the note in suit, whereupon appellee paid to the bank $7,000, which was applied in payment of appellant's note in that amount, held by the bank, and the note was thereupon canceled and surrendered to appellant. Appellee, having bought all of the outstanding minority stock issued by the consolidated com-

pany, purchased the road and property of the latter in 1910 at a foreclosure sale ordered in an action instituted by it on the mortgage securing the bonds.

At the time of the various transactions leading to the purchase of the stock, appellee, through its general counsel, who negotiated such purchase, had knowledge of the existence and terms of the Illinois statute. He did not impart such knowledge to appellant, however. Appellant some time in the spring or summer of 1910 first learned of the existence and terms of such statute. Subsequently to such time he stated that he had disposed of his stock on substantially the same terms as had the other stockholders, and that he was satisfied. If the entire transaction of the purchase of the minority stock, accomplished in 1904 and 1909, be considered, it appears that appellee paid appellant a somewhat higher rate than any other minority stockholder. This appears from the fact that he sold 480 shares in excess of half of his holdings at the $20 rate, and for the residue he received more per share than any minority holder who sold about the same time and under similar circumstances, other than the Van Camps.

The trial court found for the appellee on its complaint for the amount of the note and interest ($5,220) with attorney fee ($400) and against appellant on his cross-complaint. A motion for a new trial by appellant on the ground, among others, of the insufficiency of the evidence to sustain the decision was overruled and appellant excepted. A judgment was then rendered on such decision in favor of appellee.

We have not been cited to any decision construing the Illinois statute. We proceed to its consideration. Its evident purpose is the enlargement of the powers of railroad companies organized under the laws of the State of Illinois, subject to the limitations prescribed, together with the regulating of the exercise of such

powers to the end that they may not be used to the unwarranted detriment of stockholders.    The road of the consolidated company was a connecting road, and is embraced by the purposes of the act to the same extent as if physically situated in Indiana throughout its extent. Under such circumstances, while perhaps we are not required to determine the legality of appellee's acquisition of stock as purchased in either 1904 or 1909, since no one challenges it here, nevertheless, it is our judgment that the Illinois statute empowered appellee to own and hold not less than two-thirds of the stock of the consolidated company, and except for the statute it could not own any thereof.

In defense below and on this appeal appellee asserts that appellant has no right to inquire whether appellee, an Illinois corporation, has exceeded its powers

1.   in acquiring the stock of another railroad corporation; that the State of Illinois alone by *quo warranto* proceedings has the right to so inquire.    But when the appellee acquired and holds appellant's stock by virtue of the power conferred by the statute the court has power to inquire whether it has discharged its duty to appellant imposed by the same statute.

Appellee takes the position that appellant did not "offer" to sell his stock, but instead accepted a proposition, and that therefore the statute does not ap-

2.   ply.    It is immaterial that appellant did not in a strict and ordinary sense solicit appellee to purchase or "offer" to sell his stock.    It is enough that upon being approached by appellee with an offer to purchase appellant finally agreed to sell.    If the contrary were the rule, a corporation, acting under this statute, might forestall an "offer" by any minority holder by anticipating an offer to sell with an offer to buy, and then assert its right to purchase any or all minority stock without restriction as to terms, which would ap-

ply only to stock "offered" for sale. Appellee claims that the stock purchased was stock of an Illinois corporation. Under the facts shown above, the stock purchased was the stock of an Indiana company, and therefore the statute applied to the purchase. *Smith* v. *Cleveland, etc., R. Co.* (1908), 170 Ind. 382, 81 N. E. 501.

In answer to appellee's proposition that the sale of the stock in controversy is controlled by the laws of the State of Indiana, and not by the laws of the State of Illinois, it appears that the purchase was made under the sole authority conferred by the Illinois statute which also imposed a duty on the purchaser. And the appellee having come into a court of Indiana for relief against the party from whom he bought the stock will be required to perform its legal duty toward that person as imposed by the statute.

Appellee asserts that the "terms of purchase of all shares shall be the same to all stockholders" cannot be held to mean that every shareholder must receive the same price per share. In other words, appellee asserts that the word "terms" does not include "price." We cannot consent to this proposition. There may be other terms than price, but a contract of sale would certainly include price as one of its terms. We hold that the word "terms" in the statute includes price.

Another proposition of appellee is that appellant was competent to make the contract in question, and is now estopped to deny that he is bound thereby. If this proposition were granted, it would mean in this case that appellee may enforce the contract made by it beyond its corporate powers because only of the competency of the other party to make the contract. To so construe this statute would result in its providing that such a railroad company may purchase

minority stock upon any terms upon which it can agree with a minority stockholder, without regard to the prices paid to others, provided such minority stockholder is not incompetent by reason of age, or mental or other incapacity.

The statute was intended to protect all minority stockholders who were competent to make a contract, and this protection was provided in that the corporation was inhibited from becoming a party to a contract with one stockholder upon other terms than those fixed by its contracts with other stockholders. To hold that persons competent to contract may be compelled to abide by any terms they please to make would destroy the protective features of the statute and render utterly meaningless the provision that the company, upon buying any of the stock, must purchase all that may be offered on the same terms; and to so hold would go the full length of declaring that the corporation so purchasing could enforce the contract so made by closing the mouth of the selling party against a statement of the facts of an earlier purchase which fixed the terms upon which such earlier purchase was made.

Appellee asserts that appellant is estopped by his conduct, and especially by some of his admissions that the price he received was equal to or exceeded that received by others. But it is enough to say that no estoppel was pleaded. Moreover, it does not appear that the appellant admitted that he received the highest price paid to other stockholders at the time he sold his last 500 shares.

It is immaterial whether appellant actually owned the stock then pledged as collateral to the bank, or whether it was considered as between him and the bank to have become the bank's property because of his then inability to redeem it. However this may have been, the bank consented to its redemption, and appellee loaned appel-

lant the margin necessary for that purpose. For the purpose of the transactions, this stock was by all parties interested considered to be that of appellant. As we read the record, appellant does not contend that he has any defense to appellant's note. He acknowledges it as his debt, and is willing that it be charged against him in arriving at a judgment. He does insist, however, that by reason of the Illinois statute, above set out, he is entitled to affirmative relief against the appellee. And he urges that said statute imposed upon the appellee railroad corporation an obligation, in purchasing stock of the connecting railroad of another state, to pay for all stock of that railroad which was offered for sale at the highest price paid for any of it, and that, since the appellee acquired appellant's stock, but paid for it a less price per share than was paid for other stock purchased, he is entitled to recover on his cross-complaint the difference between the price he received and the price paid others for their stock.

We think the foregoing statement of the rule of law which governs this case is correct, but we cannot agree with appellant in the application of this rule to the facts of the case at bar. When the appellee, pursuant to an agreement of consolidation, bought all of the stock of the Indianapolis Southern Railroad Company that was then "offered" at $20 per share, including 480 shares in excess of half that appellant owned, but failed to get as many shares (one-half of forty-nine per cent.) as it had bound itself to take at that price, we think it had fulfilled its statutory duty to "take and pay for all the shares   *   *   *   offered," on the best terms on which any of them were purchased. We cannot by construction impute to the legislature of Illinois an intent that, where the appellant, owning 1,960 shares of stock and being given the privilege of selling all of it to appellee in 1904 at $20 per share, elected to sell only 480 shares,

more than one-half of it, and voluntarily kept 500 shares, although appellee was still bound by its contract to purchase 2,046· more shares at that price if they had then been offered, such appellant might keep his 500 shares for five years, without offering them to appellee, and sell them to appellee in 1909 at an. agreed price which was paid, and after the lapse of four years more, and after the insolvency of the corporation whose stock he held, when sued on a promissory note to which he has no defense, might present his counterclaim in 1913, and recover on an implied obligation of appellant to pay him for the stock which had thus become worthless, the full price at which he had refused to sell it nine years before.

Injustice, and not justice, would follow from the application of such a rule of law. And while an act of the legislature that is too plain to admit of construction must be accepted and enforced by the courts as it was written, the courts will give to a doubtful or ambiguous statute a construction, if possible, which will not lead to inequitable results. We do not think that the duty imposed by the statute above set out upon the purchasing company, when acquiring the stock of a connecting railroad, to take and pay for all the shares of such company that may be offered, upon the same terms to all stockholders, gives a shareholder the right to refuse to part with a portion of his shares at that time, to hold them for a period of years afterward, and until they have lost part or all of their value, and then turn them over to the company to which they were before refused, and recover from such company the full price which was refused for the shares in the first place. .

But in the fall of 1909, at substantially the same time when appellee purchased appellant's · last 500 shares, · and as part of the transaction by which appellee ac-

quired the outstanding stock of the Indianapolis Southern Railway Company to facilitate the foreclosure of appellee's mortgage, appellee bought of certain stockholders above referred to as "the Van Camps," 3,258 shares, for which it paid them $41,418.95, the price being computed at $20 per share for one-half and $5.426 per share for the other half of their holdings. The sale of 3,258 shares for $41,418.95 was really a sale at the rate of $12.71318 per share, if computed on the whole amount which appears to have been embraced in the single transaction between the Van Camps and appellee.

The evidence shows that the purchase of all outstanding minority stock by appellee, in 1909, including the 500 shares owned by the appellee and the 3,258 shares owned by the Van Camps, was done at substantially the same time, pursuant to an attempt by the appellee to acquire all of such stock to facilitate a foreclosure. And under the statute above set out the appellant was entitled to receive the price paid to the Van Camps; i.e., $20 per share for half of his 500 shares and $5.426 per share for the other half, or at the rate of $12.71318 for all of it. And as he was paid less than that rate, he was entitled under the evidence to recover something on his cross-complaint, and to have the amount of such recovery set off against the sum recovered by appellee on the note sued on.

We may say, in passing, that evidence was heard in support of and against the several propositions of appellee which should not have been heard, in view of the controlling nature of the statute.

The decision of the court is not sustained by sufficient evidence, and is contrary to law.

The judgment is reversed with costs, and the cause is remanded, with instructions to sustain appellant's motion for a new trial.