## EVANS v. STATE, EX REL. FREEMAN.

[No. 20,541. Filed May 9, 1905. Rehearing denied October 25, 1905.]

1. BASTARDY. — *Mayors.—Jurisdiction.—Statutes.*—Under §3497 Burns 1901, §3062 R. S. 1881, mayors of cities have jurisdiction to hear and determine bastardy cases. p. 371.
2. SAME.—*Jurisdiction of Person.—Waiver.*—A defendant in a bastardy case, failing to question the jurisdiction of the court over the person by a proper plea before pleading to the merits, waives such question. p. 371.
3. EVIDENCE.—*Bastardy.—Corroboration.*—Corroboration of the testimony of a married woman is not necessary in her prosecution of a bastardy case. p. 371, 372.

4. EVIDENCE.—*Bastardy.*—*Married Woman.*—*Non-Access of Husband.*—A married woman may testify in a bastardy case to the non-access of her husband.   p. 371.

5. APPEAL AND ERROR. — *Weighing Evidence.* — The Supreme Court will not weigh conflicting evidence in a case triable by jury.   p. 372.

6. BASTARDY.—*Witnesses.*—*Competency.*—*Common-Law Rule.*—*Statutes.*—The legislature has power, by statute, to abrogate the common-law rule regarding the competency of witnesses in a bastardy case.   p. 375.

7. EVIDENCE.—*Bastardy.*—*Jury.*—The weight of the evidence given by the prosecutrix in a bastardy case is a question for the jury.   p. 375.

8. BASTARDY. — *Married Woman.*—*Children.*—*Legitimacy.*—*Presumption.*—There is a strong, although disputable, presumption that the children of a married woman are the husband's, and the evidence to illegitimate such children should be clear and convincing.   p. 376.

9. SAME.—*Non-Access.*—*Evidence.*—Where the proof shows that the prosecutrix in a bastardy case separated from her husband in May, 1901, in another state; that she had not seen him afterwards and that the child was born September 8, 1902, a finding of non-access is sustained.   p. 377.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by the State of Indiana, on the relation of Irene Freeman, against Pleasant Evans.   From a judgment for plaintiff for $350, defendant appeals.   Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Affirmed.*

*Joseph E. Henley* and *Jesse B. Fields,* for appellant.
*Robert G. Miller* and *Arthur M. Hadley,* for appellee.

HADLEY, C. J.—The relatrix instituted against appellant a proceeding in bastardy before the mayor of the city of Bloomington, which resulted in appellant's being bound over to the circuit court.   In the latter court appellant filed a motion to dismiss the action for want of jurisdiction over his person and the subject-matter of the action, and for other reasons challenging the power of the mayor, as an examining court, to hear the case.   The motion was overruled.   There was a verdict and judgment against appellant.

His assignments here are based on the overruling of his motions to dismiss and for a new trial.

His motion to dismiss was not well taken. Section 3497 Burns 1901, §3062 R. S. 1881, in part, provides that mayors "shall have, within the limits of said city,

1. the jurisdiction and powers of a justice of the peace in all matters, civil and criminal, arising under the laws of this State." Assuming as we may, in the absence of any showing to the contrary, that the appellant was a resident of the city of Bloomington, under the above statute the mayor of the city had the authority, both as to person and subject-matter, to hear the complaint of the relatrix, and take such action thereon as is authorized in justice of the peace courts under §990 *et seq.* Burns 1901, §978 *et seq.* R. S. 1881. Besides, as to the person, appellant's

2. failure to question the jurisdiction of the mayor by a proper plea, before pleading to the action, was a waiver of his right to do so at a subsequent stage of the proceeding, or in the circuit court. *Louisville, etc., R. Co.* v. *Power* (1889), 119 Ind. 269, 271.

It is claimed that the motion for a new trial should have been granted because the verdict was not sustained by sufficient evidence and was contrary to law. Under this

3. head it is argued that in bastardy proceedings, the testimony of the relatrix, to prevail, must be corroborated by other evidence. Sections 504, 992 Burns 1901, §§496, 980 R. S. 1881, make the relatrix in such cases a competent witness, and we know of no rule of law in this State that requires her testimony to be weighed or supported in any other manner than that of other witnesses. She is not found among the exceptions to the general rule.

The relatrix had been absent from her husband for several months before the conception complained of, and appellant contends that the court erred in permitting her, a

4. married woman, to testify to the non-access of her husband. This point must also be ruled against

him.   §992, *supra; Cuppy* v. *State, ex rel.* (1865), 24 Ind.
389; *Dean* v. *State, ex rel.* (1868), 29 Ind. 483.

There was a sharp conflict in the evidence, but the jury decided that it preponderated in favor of the appellee, and we have no power to disturb it.

Judgment affirmed.


## On Petition for Rehearing.


HADLEY, J.—Appellant's petition for a rehearing is accompanied with so much earnestness and manifest research that we are impressed with the propriety of amplifying somewhat the principles of the previous decision.   Appellant claims that the court has fallen into two errors:   (1) In holding that in bastardy cases the unsupported testimony of the mother may be sufficient to sustain a judgment against the defendant, without corroboration on the point of the husband's non-access; (2) in holding that the testimony of a married woman is admissible to prove the non-access of the husband.

In 1734 Lord Hardwicke arbitrarily, in *Rex* v. *Reading,* 7 How. St. Tr. 259, 296, in a filiation proceeding—that is, to charge a bastard's father with its support—declared that a wife was a competent witness to prove the adultery between herself and the defendant, because the secrecy of the act would admit of no other proof; but that it was improper, on account of the interest of the wife in relieving her husband of the burden, to charge the maintenance of the child against the defendant, upon the mother's sole and uncorroborated testimony of the non-access of the husband.   3 Wigmore, Evidence, §2063.   This declaration of Lord Hardwicke was accepted and followed by the courts of England down to 1777, when Lord Mansfield, in *Goodright* v. *Moss,* Cowp. 591, announced as the law of England, founded in decency, morality and policy, that neither husband nor

wife would be permitted, as a witness, to bastardize the issue of the wife after marriage by testifying to the non-access of the husband.

Under the doctrine of Lord Mansfield a married mother's testimony was no longer a question of corroboration, but one of competency in relation to access of the husband. It was a doctrine which, as against husband and wife, conclusively presumed the legitimacy of the child, but recognized the wife's right to testify to the illicit connection, to the birth of the child before marriage, or within a month after marriage; but denied her the right to be heard to say that her husband was continuously absent in the army for two years next before the birth of the child.

"Such an inconsistency," says Prof. Wigmore, in his treatise on evidence, "is obviously untenable. * * * The truth is that these high-sounding 'decencies' and 'moralities' are mere pharisaical afterthoughts, invented to explain an otherwise incomprehensible rule, and having no support in the established facts and policies of our law. There never was any true precedent for the rule; and there is just as little reason of policy to maintain it." 3 Wigmore, Evidence, §2064.

There has been much diversity among the American courts as to which of the two English rules was the sounder. In the early part of the last century the tide was decidedly in favor of the Hardwicke view, while later on the Mansfield rule seems to have attracted the most attention and found the most favor among the courts in states where the matter has not been regulated by statute.

The law being thus unsettled when our state government was organized, the legislature at its second session somewhat extended the Mansfield rule by the passage of an act which effectually closed the door against prosecutions for bastardy by married women, by providing for such prosecutions by unmarried women only. Acts 1818, p. 229; *Smith* v. *State* (1836), 4 Blackf. 188. The operation of this Indiana rule

was found to be attended with so much hardship and injustice that the legislature again took the subject up in 1843 (R. S. 1843, p. 363), and provided that "Any woman who has been delivered of a bastard child, or who is pregnant with a child" may prosecute, and "such woman shall be admitted as a competent witness on such trial, leaving her credibility to the jury." These provisions of 1843 were carried into the revision of 1852 in these words: "When any woman has been delivered of, or is pregnant with, a bastard child, shall make complaint. * * * But the rules of evidence shall be the same as in civil cases; and the mother of the child, if of sound mind, shall be a competent witness." §§978, 980 R. S. 1881, 2 R. S. 1852, p. 485, §§1, 3. The death of the mother shall not abate the suit, "And in such case, the testimony of the mother, taken in writing before the justice, may be read in evidence, and shall have the same force as if she were living, and had testified to the same in court." §988 R. S. 1881, 2 R. S. 1852, p. 485, §11. The statute as adopted in 1852 was carried bodily into the revision of 1881, and is now in force. §978 *et seq*. R. S. 1881. After the passage of the act of 1852, and before its reënactment in 1881, the former act was twice interpreted by this court. *Cuppy* v. *State, ex rel.* (1865), 24 Ind. 389; *Dean* v. *State, ex rel.* (1868), 29 Ind. 483.

In the case of *Cuppy* v. *State, ex rel., supra,* it is said: "At common law, a married woman was not a competent witness to prove non-access by the husband, but our statute has declared 'that the mother of the child, if of sound mind, shall be a competent witness.' 2 G. & H., §3, p. 625. A witness declared competent by statute is to be regarded as any other witness, and restrictions imposed by the common law can not be applied as restricting her testimony, in the face of the express letter of the statute."

This construction of the act of 1852 having been promulgated prior to the revision of 1881, the legislature at the

latter date, in reënacting the statute of 1852, will be held to have adopted also the construction put upon the law by the court. *Board, etc.,* v. *Conner* (1900), 155 Ind. 484, 496, and cases cited.

We are now asked to overrule the cases of *Cuppy* v. *State, ex rel., supra,* and *Dean* v. *State, ex rel., supra,* and to hold that the statute conferring upon all women, married or unmarried, competency to testify, has, by implication, ingrafted upon it either the Hardwicke rule, which requires corroboration of married mothers, or the Mansfield rule, which, for the sake of decency and seemliness, excludes married women from testifying concerning the access of the husband. The legislature had clearly the power to 6. abrogate the common-law rule, and to declare who shall be competent to testify in this as well as all other cases. There is nothing doubtful or ambiguous about the words, "The mother [any mother] of the child, if of sound mind, shall be a competent witness." A competent witness to what? Manifestly to prove the complaint provided for in the first section of the act, charging the defendant with being the father of her illegitimate child. She is declared to be competent to testify in support of the charge, which, in the absence of any express limitation or restriction, means, all the elements necessary to sustain the charge, including the principal fact.

The corroboration of the relatrix, contended for by appellant, goes only to affect her credit, or the probative force of her testimony, which may or may not be sufficient 7. without corroboration. As to this all persons with us are competent witnesses except such as are expressly disqualified by statute; and as we have no statute requiring corroboration in order to convict in this sort of case, as in seduction, enticing, perjury, and other crimes, there need be none, and the weight to be given the testimony of the relatrix, as that of other competent witnesses in civil causes, and whether sufficient to authorize recovery,

is, in the language of the act of 1843, "left to the jury." See 7 Am. and Eng. Ency. Law (2d ed.), 868; *Olson* v. *Peterson* (1891), 33 Neb. 358, 50 N. W. 155; *State* v. *McGlothlen* (1881), 56 Iowa 544, 9 N. W. 893; *People, ex rel.,* v. *Lyon* (1894), 83 Hun 303, 31 N. Y. Supp. 942; *State* v. *Nichols* (1882), 29 Minn. 357, 13 N. W. 153; *State, ex rel.,* v. *Tipton* (1894), 15 Mont. 74, 38 Pac. 222; *McFarland* v. *People* (1874), 72 Ill. 368.

We will say, however, in passing, that the prevailing presumption that a child born in wedlock is legitimate is a just and salutary rule that should not be lightly regarded. It is not the duty of a court or jury in all cases to find the non-access of the husband proved upon the testimony of the wife alone. On the contrary, the court should always carefully scrutinize the testimony of a married woman, and when it is shown that the parties were still living together in the period when the child must have been begotten, and the husband had opportunity, proof of the principal fact, viewed in the light of all the surrounding facts and circumstances, should be direct, clear and convincing to justify the court in charging the defendant, and in placing the badge of dishonor upon the unoffending offspring of the mother. The fact, however, should be determined, like any other fact, from a consideration of all the evidence submitted, giving due weight to all collateral facts that reasonably and naturally affect the value of the testimony. *Continental Ins. Co.* v. *Jachnichen* (1887), 110 Ind. 59, 59 Am. Rep. 194.

What we have already said disposes of the second proposition.

The statute which dispenses with corroboration as an essential to recovery also makes the married mother a witness, generally, in her own prosecution for bastardy, and her credibility on every issuable fact is left to the jury.

The record discloses that the relatrix, in giving responsive answers to questions propounded to her by appellant's

counsel, testified that her child was born September 9. 8, 1902; that she came to Bloomington from Louisville, Kentucky, in October, 1901; that five months before leaving Louisville she and her husband separated; and that she had never been with nor seen her husband since the separation. This was sufficient to justify the court's finding of non-access of the husband.

We are now strengthened in our view that the original opinion correctly stated the law.

Petition for rehearing overruled.