## PILGRIM *v.* PILGRIM

[No. 17,629.   Filed October 24, 1947.   Rehearing denied November 17, 1947.   Transfer denied December 11, 1947.]

*C. W. H. Bangs,* of Huntington, attorney for appellant.

*Howard E. Plummer,* of Wabash, attorney for appellee.

FLANAGAN, J.—Appellee brought this action against appellant for divorce charging adultery and that he was not the father of a child born during the period of the marriage. Trial resulted in a decree in his favor.

The sole error assigned here is the overruling of appellant's motion for a new trial which contains twenty-one specifications. Specifications numbered 8, 9, 10, 12, 13, 14, 15 and 21 are expressly waived. Specifications numbered 6, 11, 16 and 20 are waived by failure to cite authority. Specification numbered 5 is not supported by any proposition or point and is therefore waived. Rule 2-17, Rules of Supreme Court.

The evidence most favorable to appellee so far as it is pertinent to the issues presented by this appeal support the following facts:

The appellant and appellee were married on April 6, 1944. On April 24, 1944, appellee went over-seas as a

member of the United States Army and remained outside the continental limits of the United States until December 8, 1945. He was discharged from the army on December 14, 1945, and on the next day saw his wife for the first time since his departure in April, 1944. At some time about two months after his return his wife informed him that she thought she was pregnant. He took her to a doctor who said the baby was about four months gone. Appellee said it could not be four months gone and be his. Appellant started crying. Later the doctor said to appellant and appellee that the baby was coming in July. The parties continued to live together until the baby was born by Caesarean section on June 23, 1946. It was not less than a seven-months baby. When appellant left the hospital she went to the home of her parents and appellee went to the home of his parents. They did not live or cohabit together thereafter although at several times they met and kissed and hugged each other and otherwise showed some tendency toward reconciliation. About a month after the baby was born appellant and appellee went to another doctor with the baby and were again informed that it could not be a six-months baby. Upon leaving this doctor's office appellant informed appellee that in his absence she had had intercourse with another man. Later she made an affidavit in which she stated that she had had sexual relations with another man on four occasions in September and October, 1945, and that the child born to her was not the child of appellee.

Under its specifications numbered 1 and 2 appellant contends that appellee condoned any alleged acts of adultery on her part. She points to three items of evidence, (1) her own statement that she and appellee had intercourse after the baby was born and he had her statement admitting adultery, (2) his kisses and hugs

and tendency toward reconciliation after the baby was born and he had her statement admitting adultery, and (3) his continuing to live with her after the doctor told him that the baby was four months along when he had been home only two months and after the doctor told him the baby would be born in July.

As to item above number (1) appellee denied ■ having intercourse with appellant after the birth of the baby and we are bound to accept the evidence most favorable to him.

Item numbered (2) requires us to examine the question as to what constitutes condonation.

In the early case of *Phillips* v. *Phillips*, 4 Blkf. 131, our Supreme Court said that a divorce will not be granted "if the complainant has forgiven the offense. This forgiveness may be either express or it may be implied from the fact of subsequent cohabitation after knowledge of the offence."

In the case of *Sullivan* v. *Sullivan*, 34 Ind. 368, our Supreme Court defines condonation as "the forgiveness, either express or implied by the husband of the wife or the wife of the husband, for a breach of marital duty."

In the case of *Burns* v. *Burns*, 60 Ind. 259, our Supreme Court said:

> "Condonation may be inferred from the facts of living and cohabiting by the injured party with the offender after knowledge of the offence. Cohabitation will be inferred, nothing appearing to the contrary, from the fact of the living together of husband and wife. We use the word 'cohabit' and 'cohabitation' as implying sexual intercourse."

It is provided by statute that "Divorces shall not be granted for adultery—when the party seeking the divorce has voluntarily cohabited with the other, with knowledge of the fact."

There is no contention here that appellee expressly forgave appellant. The question is: Do kisses, hugs and a tendency toward reconciliation imply forgiveness?

It will be noted that both in the decisions and in the statute above noticed the only act referred to as implying forgiveness is the act of cohabitation. We have found no other case in this state suggesting the sufficiency of any other act. We think it has been the purpose of the law to so limit implied condonation. The reasons seem apparent. Recognizing the fact that the family unit is the basis upon which society is built it is always the policy of the law to encourage the reconciliation and reunion of a husband and wife. The objective and culmination of such reconciliation and reunion is the resumption of normal marital relations, living and cohabiting together as husband and wife. But to penalize one of the parties for entering into any of the steps leading to such culmination is to discourage the endeavor. The law will not so thwart its good purposes. The acts of the parties in this case in meeting, kissing, hugging and displaying tendencies toward reconciliation did not in our opinion constitute condonation on the part of appellee.

On the question of condonation there remains the third item pointed out by appellee. About two months after his return from the service appellee took appellant to a doctor who stated that appellant was about four-months pregnant. To this appellee replied that it could not be and still be his baby. His wife cried. Later the doctor said the baby would be born in July. There is no question but that appellee continued to live and cohabit with appellant after these occurrences. But was the trial court bound to find that

he did so with the knowledge that his wife had committed adultery?

Clearly knowledge means more than receiving information which is calculated to arouse suspicion. A man is not required to flee his wife in the wake of the first breath of accusation that blows in her direction. Is it not rather his duty to stand firmly in her defense until proof is produced and aggregated much stronger than would be required were the accused one to whom he was bound with less tender and solemn ties? It is generally known, and indeed readily admitted by the medical profession, that the physician's science is not yet an exact one.

In the present case the appellee had the opinion of a qualified physician that his wife was about four months pregnant and that the baby would be born in July. He knew that he had no access to her when a pregnancy developed to that extent could have had its origin. Was he thereby charged with knowledge that his wife had committed adultery? Knowing that nature sometimes plays havoc with the physician's most expert diagnosis, was he bound to believe the accuracy of the doctor's opinion as against the tears in the eyes of his wife? We think the trial court was justified in concluding that appellee had more confidence in the purity of his spouse than in the opinion of the physician. Such a conclusion seems to us not only proper but wholesome.

Under specifications numbered 3 and 4 appellant complains of the admission in evidence of her affidavit referred to in the above statement of facts. The reason given is that it tends to "bastardize" the child. Whether the declaration of a mother made out of court is proper evidence to rebut the presumption of legitimacy of a child born during marriage we

need not decide. The court admitted the affidavit on the issue of the alleged adultery of appellant only. It might be noted in passing that under the present law of this state children born out of wedlock are not termed bastards. §§ 3-623 to 3-657, Burns' 1933.

Under specification numbered 7 appellant complains of the action of the trial court in refusing to admit in evidence an exhibit offered by her. A medical witness identified the exhibit as being a copy made by him of a chart prepared by another doctor showing various periods of gestation and weights of babies as medical science has recorded it. Admission was properly denied under the hearsay rule. Jones on Evidence (4th ed.), § 578, p. 1090.

Under specification numbered 17 appellant complains that the court failed to find that the child born to her on June 23, 1946, was the child of appellee. It is suggested by appellant that the paternity of the child was not a proper issue and that the presumption of legitimacy of a child born during marriage cannot be rebutted.

The question as to whether appellee is the father of the child was put in issue by the pleadings. Appellee alleged that he was not its father and this allegation was traversed by appellant. Appellant does not point out wherein the issue was improper. It seems to us that the appropriate place to have the question determined was in the divorce case.

The modern doctrine, and the one which has been adopted in this state, is that the presumption of the legitimacy of a child born during a marriage may be rebutted by evidence that the husband could not have had access to the mother at the time when the child must in the course of nature have been begotten. *Cuppy* v. *The State on the relation of Grant-*

*ham,* 24 Ind. 389; *Dean* v. *The State on the relation of Marrical,* 29 Ind. 483; *Evans* v. *State ex rel.* (1905), 165 Ind. 369, 74 N. E. 244, 75 N. E. 651; *Phillips* v. *State ex rel. Hathcock* (1925), 82 Ind. App. 356, 145 N. E. 895; *Darrok, Gdn.* v. *Geisen* (1936), 102 Ind. App. 14, 200 N. E. 711, 7 Am. Jur. § 43, p. 665; 10 C.J.S. §3, p. 18.

The evidence in this case, omitting the out of court statements of the mother, is ample to show that appellee could not have had access to appellant from April 24, 1944, to December 15, 1945, that the baby was born on June 23, 1946, and that it was at least a seven-months baby. Such evidence is sufficient.

Under specifications 18 and 19 appellant insists that the court should have entered an order for the custody and support of the child. By its' general finding for appellee on the issues presented the court found that he was not the child's father. An order for its custody and support would have been improper. The statute providing that the court shall make an order for custody and support refers only to the children of the marriage. § 3-1219, Burns' 1933.

Judgment affirmed.

NOTE.—Reported in 75 N. E. 2d 159.