402 N.E.2d 30 (1980)
R.D.S., Respondent, Cross-Petitioner Appellant,
v.
S.L.S., Petitioner, Cross-Respondent Appellee.
No. 2-778A251.
Court of Appeals of Indiana, Second District.
March 26, 1980.
*31 Frederick F. Frosch, Frosch & Frosch, Indianapolis, for R.D.S.
SHIELDS, Judge.
Husband appeals the trial court's determination of child's parentage and husband's affirmative obligation of support.
Husband and wife were married February 16, 1974, approximately three weeks prior to the birth of her child on March 3, 1974. Wife's petition for dissolution filed September 12, 1974 was granted February 23, 1978 by a decree which provided, in part:
There was born as a result of this marriage One (1) child, namely, R.M.S., age three (3). That the Petitioner is a fit and proper person to have the care and custody of said minor child subject to the reasonable rights and visitations to the Respondent herein.
That the sum of Thirty ($30.00) Dollars per week per child is a reasonable amount of support on said minor child.
.....
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT: That the Petitioner shall have care and custody of the parties minor child, namely R.M.S. age three (3), subject to reasonable rights and visitation to the Respondent herein.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT: That the Respondent shall pay to the Petitioner for the support of said minor child, the sum of Thirty ($30.00) Dollars per week per child.

I.
The trial court erred in determining the child was born of the marriage.[1]
A child born during marriage[2] is presumed legitimate. This presumption is not conclusive although it may be rebutted only by direct, clear, and convincing evidence. Duke v. Duke, (1962) 134 Ind. App. 172, 185 N.E.2d 478. Uncontroverted evidence of non-access by husband at the time of conception will meet this high standard. Pilgrim v. Pilgrim, (1947) 118 Ind. App. 6, 75 N.E.2d 159.
We have such non-controverted evidence before us. At trial wife admitted husband was not the biological father of the child. In fact, husband and wife did not meet until Christmas 1973, at which time wife was visibly pregnant.

II.
Some jurisdictions take the position in a dissolution of marriage the duty of continued child support falls upon only a biological or adoptive parent. Other jurisdictions, without statutory authorization, have used a myriad of rationales to extend the duty of support to a wife's illegitimate child upon the termination of the marriage.

*32 1. Equitable adoption.

A man, marrying a woman he knows is pregnant, is held to adopt the child at birth and is held liable for its support as one standing in loco parentis. This principle was stated in Miller v. Anderson, (1885) 43 Ohio St. 473, 3 N.E. 605, 608:
If another man, not the father of the unborn child, elects to stand in loco parentis to the child, the law will esteem such man as the father. That one who marries a woman that he knows to be enciente is regarded in law as adopting the child into the family at its birth. That he could not expect the mother to discard it, or abandon it at its birth, or refuse it nurture or maintenance, and that the child, so receiving nurture and support, must necessarily become one of the family of the wife, which would also be of the family of the husband. That this understanding must necessarily enter into the marriage contract of the husband and wife; and when this relation is established, the law raises a conclusive presumption that the husband is the father of such child.
* * * And this rule, as announced, is established upon obvious principles of public policy and decency. This child was born in 1865. The husband had prior thereto condoned the wife's offense, and, by taking her in marriage with full knowledge of her condition, adopted her child on its birth into his family, and, even if he was not its natural father, consented to stand in law as such, with all the rights and responsibilities of a father in fact.
See, Gusten v. Gusten, 108 Ohio App. 171, 161 N.E.2d 68.

2. Equitable estoppel.

A man who makes an express or implied misrepresentation of fact (fatherhood) to the child inducing the child to alter his position to his prejudice remains liable for child's support upon termination of marriage.
This concept was thoroughly discussed in Clevenger v. Clevenger, (1961) 189 Cal. App.2d 658, 11 Cal. Rptr. 707, 714-715, 90 A.L.R.2d 569, 579-580.
If the facts should show, however, that the husband represented to the boy that he was his father, that the husband intended that his representation be accepted and acted upon by the child, that the child relied upon the representation and treated the husband as his father and gave his love and affection to him, that the child was ignorant of the true facts, we would have the foundation of the elements of estoppel (citations omitted).
Breaking down the factors involved here, the benefits to the husband in such instance would be (1) the bestowal upon him of the love and affection of the child as a natural child, based upon the representation that the husband was the natural father, (2) the substitution of the husband in the status of father in the place of the natural father, so that the putative father would have the possession and custody of the child instead of the natural father, and the right to the child's earnings, (3) the community's recognition of the husband as a father, a status from which appellant undoubtedly derived prestige and fulfillment.
The husband's representation that he was his natural father would cause these consequences and detriments to the child: (1) It would deprive the child of the potential action of the mother, as his guardian, at the time of the child's birth, to hold the natural father liable for the support of the child. The child thus relies upon the husband's representation and does not attempt to find the natural father. As of the present date it is realistically impossible to do so. This reliance works a definite detriment to the child. (2) It would induce the child to accept the husband as his natural father and render to him the affection and love of a son, with the son's reasonable expectation of care, support and education until adulthood. The reversal of this representation, through the publication of the illegitimacy of the child, inflicts deep injury upon him. To be designated as an illegitimate child in preadolescence is an emotional *33 trauma of lasting consequence. Having placed the cloak of legitimacy upon the child, having induced the child to rely upon its protection, the husband by abruptly removing it surely harms the child. The child has therefore relied on the conduct of the husband to his injury. (3) It would induce the child to hold himself out to the community as the natural son of the husband, one of the benefits which the appellant apparently desired, only to suffer the abrupt removal of that status, and to undergo the subsequent social injury.
These are the elements of estoppel, and that they would, if established, apply here in unusual circumstances, does not make them the less appropriate. If we sanction them in dealing with property in commercial transactions, we do not discard them in dealing with a child and an asserted father involved in a deep-rooted human relationship.

3. Loco parentis.

An obligation of continued support is imposed if circumstances other than marriage of husband and natural mother indicate husband's assumption of the position of loco parentis and husband's intent that the position continue after termination of the marital relationship.
In Fuller v. Fuller, (D.C.App. 1968) 247 A.2d 767, 770, first defined the term loco parentis:
[It] refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties.
Niewiadomski v. U.S., (6th Cir.1947) 159 F.2d 683, 686, cert. denied, 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859.
Thus, the continuation of the relationship of loco parentis is a matter which lies within the will of the husband and it may be abrogated by him at any time. One such time is upon the dissolution of marriage unless husband intends the relationship to continue.

4. Contract to support or adopt child.

This theory was discussed in Clevenger v. Clevenger, supra.
On the other hand, we see no theoretical reason why a contract for the support of an illegitimate child during its minority between the mother and the mother's husband would not be enforceable. The husband receives as consideration the custody and control of the child as well as the right to its earnings.
... .
[T]he promise by the putative father to support the child would fall within the sanction of section 90 of the Restatement of the Law of Contracts, declaring: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
...
The prerequisite to any such consensual obligation is, of course, the consummation of an express agreement and its partial performance.
Looking to Indiana precedent, this Court has said a support order against a husband who is not the child's father
... would have been improper. The statute providing that the court shall make an order for custody and support refers only to the children of the marriage. § 3-1219, Burns' 1933.[3]
Pilgrim v. Pilgrim, (1947) 118 Ind. App. 6, 75 N.E.2d 159. The Dissolution of Marriage Act, effective September 1, 1973, effected no change. IC 31-1-11.5-2(c) reads:

*34 The term `child' means a child or children of both parties to the marriage and includes children born out of wedlock to such parties as well as children born or adopted during the marriage of such parties. (emphasis added)
A child must be the child of both parties to the marriage to fall within the clear meaning of the statute. This is true whether the child is born or adopted during the marriage of the parties or born out of wedlock to such parties. In either circumstance it must be the child of both parties.
This child is not. Although it was born to wife during her marriage to husband, it was not fathered by husband. Of course had husband sired the child, the child would have fallen within the definition of child provided by IC 31-1-11.5-2(c) regardless of whether she was born before the marriage, and hence born out of wedlock to the parties, or conceived before marriage but born after marriage, or conceived and born during marriage, or conceived during marriage but born after a dissolution of the marriage.[4]
We believe this position not only expresses the provisions of the statute, but also the legislative intent.
Section 104(c) of the Proposed Dissolution of Marriage Act prepared by the Subcommittee on Dissolution of Marriage of the Civil Code Study Commission reads:
(c) The term `child' means a child or children of both parties to the marriage and includes children born out of wedlock to such parties as well as children born during the marriage of such parties.
This subsection was enacted by the General Assembly with an amendment that is of no consequence to this case.[5]
In the comments to Section 104(c), the Subcommittee stated:
. . . For the purposes of this Act all children born of the parties to the marriage are included. Thus an illegitimate child may obtain support, under this Act, if his father subsequently marries his mother. (emphasis added)
Thus it appears our statute resolves the issue presented against wife and, without benefit of an appellee's brief, we are not in a position to consider the wisdom or application of any expansion of that statute.
We understand the dissent would place the duty to support on husband because he "acknowledged" the child. However, we do not find Small v. State, (1948) 226 Ind. 38, 77 N.E.2d 578, cited by the dissent persuasive.
First, the Supreme Court in its Small decision specifically acknowledged that legal parentage had been previously determined in a divorce action between the defendant Small and his former wife. Furthermore, the Small court was influenced by a probate statute, enacted in 1831, reenacted in 1843 and 1852 and repealed in 1954,[6] that provided:
If a man shall marry the mother of an illegitimate child, and acknowledge it as his own, such child shall be deemed legitimate.
Under that statute, for inheritance purposes, a man became the father of the child, whether or not he was the biological father, by the act of marriage and acknowledgment, and the child was legitimized.
The present probate statute,[7] for inheritance purposes, requires that paternity be established by law during the father's lifetime or the marriage of the putative father to the mother of the child, and acknowledgment of the child as his own. However, such a child remains illegitimate.[8]
Thus Small does not present authority for the effect of our present law concerning *35 inheritance by an illegitimate child, vis a vis the duty of support upon the termination of a marriage. We do observe the present probate statute, like the former, does not require proof of actual fatherhood, but only marriage between the mother and putative father and acknowledgment of the child by the putative father as his own. However, the evidence in this case does not raise an issue of "probate" acknowledgment such that its effect on the support duty can be reached.
We have examined the record and must comment on the evidence cited by the dissent as supporting acknowledgment by husband. Fatherhood, biological or otherwise, is simply not a condition to claiming a child for income tax purposes. In a joint return the wife's illegitimate child may be claimed as an exemption without the husband acknowledging the child as his. The record further does not support the dissent's statement husband "promised to care for her child." Indeed, that statement, were it made, rather than being an acknowledgment, is a denial of fatherhood. Otherwise, the record reflects no evidence of acknowledgment of the child as his.
Cause reversed and remanded with instructions to vacate the determination of husband's paternity and his obligation to support the child.
SULLIVAN, J., concurs.
BUCHANAN, C.J., dissents, with opinion.
BUCHANAN, Chief Judge, dissenting.
I respectfully dissent.
The statute,[1] though ambiguous, can be interpreted as including the child within the peculiar facts of this case as a child "of the marriage." To so interpret the statute is consistent with well-recognized rules of construction, sustains the public policy of this state, and would prevent a miscarriage of justice.
The statute in question replaced an earlier one which stated simply that support would be provided for children "of such marriage."[2] In enacting the new law, the legislature attempted a better definition of children, the legislation intending to protect a broad class of children. It reaches "children born out of wedlock[3] ... as well as children born or adopted during the marriage."[4] The inclusion of adopted children demonstrates that biological parentage is not the sole factor in determining whether a support duty is owed. An intent is manifested to impose the obligation wherever a common-law or statutory duty might previously have been found. In fact, the statute can be interpreted as excluding only children born during a prior marriage of one spouse[5] or born to an unmarried woman and sired by another man. The fact that the law was revised is significant, and we should give due attention to the apparent motive for the change. See State ex rel. Rogers v. Davis (1952), 230 Ind. 479, 104 N.E.2d 382.
*36 Unfortunately, the change did not resolve all ambiguity. It does not say the child must be "conceived" during the marriage,[6] yet it is reasonable to read the statute that way, as does the majority's opinion. Perhaps more significantly, it does not indicate what "of both parties" means, although the majority interpret it as meaning biological or legally adopted. However, the law of this state is not so narrow on the issue of support duties. In Small v. State (1948), 226 Ind. 38, 77 N.E.2d 578, our Supreme Court held that a man who acknowledges a child as his own legitimates the child and so incurs parental support obligations, regardless of whether he is the true (biological) father. The statute cited was one dealing with intestate succession,[7] yet its policy was found persuasive for purposes of divorce and the commensurate support obligations that arise there.[8] It is axiomatic that the legislature is presumed to draft laws with knowledge of all laws pertaining to the subject. Schrenker v. Clifford (1979), Ind., 387 N.E.2d 59; Town of Jasper v. Cassidy (1913), 53 Ind. App. 678, 102 N.E. 278; State v. Gerhardt (1896), 145 Ind. 439, 44 N.E. 469. This must include the common-law, for courts are to reconcile statutes with the common law whenever possible. Fisher v. State (1973), 156 Ind. App. 18, 294 N.E.2d 632. Courts are inclined to interpret a statute in conformity to common-law concepts when the letter of the statute is silent in regard to certain consequences analogous to situations governed by common-law principles. 2A Sutherland, Statutes and Statutory Construction 407 (C. Sands, 4th ed. 1973).
If we interpret the statute as including an illegitimate child acknowledged by the father, regardless of whether he is the biological father, then it logically follows that the child in this case would be awarded support. R.D.S. treated this child as his own in all ways and for all purposes, including (among many others) income tax deduction. Cf. Miller v. Miller (1967), 142 Ind. App. 90, 231 N.E.2d 828, 834. Under the totality of the circumstances, the trial judge was justified in calling this child a child "of the marriage." To hold otherwise one must read into the statute an exception which is at odds with other laws of this state.
To interpret the statute as embracing the recognized parental support obligation is preferable in still another respect. In enumerating persons entitled to parental support, the legislature obviously intended to preclude the possibility of parents seeking to abrogate support duties by urging narrow constructions of the statutory language. The statute should be liberally interpreted so as to suppress the evil it was intended to remedy, see Fort Wayne Community Schools v. State ex rel. New Haven Public Schools (1959), 240 Ind. 57, 159 N.E.2d 708; City of Indianapolis v. Evans (1940), 216 Ind. 555, 24 N.E.2d 776, and to prevent evasion thereof, Adkins v. Indiana Employment Security Division (1947), 117 Ind. App. 132, 70 N.E.2d 31. If more than one construction is possible, we must consider the consequences and the intended evils. State ex rel. Bynum v. LaPorte Superior Court (1973), 259 Ind. 647, 291 N.E.2d 355. See also Bohannan v. Bohannan (1961), 132 Ind. App. 504, 167 N.E.2d 717. We should not permit ourselves to be bound in a strait jacket under the guise of intrinsic limitations. Woods v. State (1957), 236 Ind. 423, 140 N.E.2d 752.
Likewise, the statute should be construed to prevent hardship or injustice. Helms v. American Security Co. of Indiana (1939), 216 Ind. 1, 22 N.E.2d 822. A construction which results in injustice should not be *37 countenanced. Crowe v. Board of Comm'rs of St. Joseph County (1936), 210 Ind. 404, 3 N.E.2d 76.
Under the peculiar facts of this case,[9] the only just result is to impose upon R.D.S. the support duty he willingly promised and undertook. When R.D.S. met S.L.S., she was visibly pregnant. When he proposed marriage to her, he urged her to drop a paternity suit for his own reasons: he did not want another man involved. He promised to care for her child, and he did so. He clearly undertook the responsibilities of a legal father, not as the result of any fraud. S.L.S. testified that she "relied on his statements that he would take care of the child." [Tr. at 90.] By the time the dissolution was granted, S.L.S. was precluded from bringing the paternity action. See Ind. Code § 31-4-1-26.[10] To shift this burden to the child, as R.D.S. suggests we should do, is wholly unjust. We could only speculate as to whether such paternity could be established, assuming the biological father could be found. A dissolution action is an equitable proceeding; the statute should not be construed to lead to inequitable results. Williamson v. Illinois Central R. Co. (1920), 190 Ind. 239, 128 N.E. 758. By his actions, R.D.S. should be estopped to deny parentage of this child.[11] A husband who has put himself in loco parentis[12] of a bastard child of his wife ought not be permitted to disturb the family relation by establishing the child's bastardy after condoning the wife's offense by taking her in marriage. Phillips v. State ex rel. Hathcock (1925), 82 Ind. App. 356, 145 N.E. 895, 897 (dictum).
The trial judge here correctly based his decision on a broad interpretation of the statute consistent with established public policy.[13] The public policy of this state is determined from, among other things, the decisions of its court of last resort. Russell v. Johnson (1943), 220 Ind. 649, 46 N.E.2d 219, 225. Our Supreme Court has on a number of occasions demonstrated its profound concern for the welfare of children caught in the throes of divorce or dissolution proceedings. E.g., Buchanan v. Buchanan (1971), 256 Ind. 119, 267 N.E.2d 155; Wible v. Wible (1964), 245 Ind. 235, 196 N.E.2d 571; Watkins v. Watkins (1943), 221 Ind. 293, 47 N.E.2d 606; Duckworth v. Duckworth (1932), 203 Ind. 276, 179 N.E. 773. So strong is this regard that in L.F.R. v. R.A.R. (1978), Ind., 378 N.E.2d 855, the Court stated that the testimony of the parents can be discounted in order to find a child legitimate. Id. at 856, citing Buchanan, supra at 157. Public policy is, therefore, something greater than the interests of the two parties to the lawsuit. See McClanahan v. Breeding (1909), 172 Ind. 457, 88 N.E. 695. The interests of society in seeing that children are not bastardized subsequent to marriages, and in seeing that support is *38 adequately provided must be taken into account judicially in carrying out legislative intent and fulfilling public policy.
This is not to suggest the statute should be read to impose support liability upon any husband whose wife gives birth during the marriage to a child sired by another man. There are instances in which to do so would be to condone adulterous conduct.[14]See e.g., Pilgrim v. Pilgrim (1947), 118 Ind. App. 6, 75 N.E.2d 159. However, the facts of this case are quite distinguishable. R.D.S. took this child into his home and gave her his name with full knowledge of her biological paternity; there was no fraud to impugn the integrity of the marital contract.[15] He uncompromisingly accepted the fact of the premarital relationship which resulted in conception. This should be contrasted to the Pilgrim decision, in which this Court held that under circumstances revealing no condonation of the wife's adultery, the husband's child support should not be required. See Pilgrim, supra at 161.
Thus, I would affirm the judgment on the basis that under these circumstances a liberal interpretation "of a child ... of both parties to the marriage" should be adopted as consistent with the obvious intent of the legislature in enlarging the category of those considered to be "children" and as consistent with declared public policy favoring support of children, and integrity of the family unit.
Differently stated, the statutory definition of children should be interpreted as though wedded to the public policy concerning the welfare and support of the young.
NOTES
[1] But see A.B. v. C.D., (1971) 150 Ind. App. 535, 277 N.E.2d 599 where this Court stated:

The finding that the child "was born as the issue of this marriage" amounts to no more than a finding that he was born to the wife during the marriage.... 150 Ind. App. 535, 560, 277 N.E.2d 599, 616.
[2] We prefer the term "marriage" as opposed to "wedlock" because the latter has been held to refer to "... the status of the parents of the child in relation to each other." Pursley v. Hisch, (1949) 119 Ind. App. 232, 235-236, 85 N.E.2d 270, 271. Thus a child born to a married woman but not fathered by her husband is a child born out of wedlock.
[3] Acts of 1873, ch. 43, § 21, p. 107, as found in § 3-1219, Burns' 1933 read:

The court in decreeing a divorce shall make provision for the guardianship, custody, support, and education of the minor children of such marriage.
[4] L.F.R. v. R.A.R., (1978) Ind., 378 N.E.2d 855.
[5] The phrase "or adopted" was inserted following the phrase "as well as children born."
[6] 1 R.S. 1852, Ch. 27, § 9 (formerly Ind. Ann. Stat. § 6-2310 (Burns 1933).
[7] IC 29-1-2-7(b) (Burns Code Ed. 1972).
[8] A.B. v. C.D., (1971) 150 Ind. App. 535, 277 N.E.2d 599.
[1] term "child" means a child or children of both parties to the marriage and includes children born out of wedlock to such parties as well as children born or adopted during the marriage of such parties.
Ind. Code § 31-1-11.5-2(c).
[2] Burns Ind. Stat. Ann. § 3-1219.
[3] "Born out of wedlock" appears to have two different meanings. Ordinarily, it would seem to mean born while the mother was unmarried; we could thus conclude this child would have been "out of wedlock" had husband not intervened. Some cases have held, however, that a child born to a married woman but sired by a man other than the husband is a child "born out of wedlock." E.g., Pursley v. Hisch (1949), 119 Ind. App. 232, 85 N.E.2d 270. The child in this case was "born" to the parties in the sense that they were married to each other at the birth, and their names appeared as the parents on the birth certificate. The child was born "out of wedlock" in the sense that although the parties were married at the time of the birth, the child had been sired by another man.
[4] It should be noted that in L.F.R. v. R.A.R. (1978), Ind., 378 N.E.2d 855, the new statute was held to include a child born after the marriage was dissolved, notwithstanding the statutory language, "born ... during the marriage."
[5] This would comport with the holding in Proffitt v. Proffitt (1965), 137 Ind. App. 6, 204 N.E.2d 660.
[6] In Duke v. Duke (1962), 134 Ind. App. 172, 185 N.E.2d 478, the child was conceived before marriage (under former divorce statute); in L.F.R., supra note 3, the child was conceived after the parties' separation yet before the final decree.
[7] Burns Ind. Stat. Ann. § 6-2310 (1933). A subsequent change in the statute did not obliterate the precedential value of the Small case on the issue of support duties. That case was cited as authority in Miller v. Miller (1967), 142 Ind. App. 90, 231 N.E.2d 828.
[8] The practice of construing statutes by reference to other statutes is based on the sound policy of advancing positive values of harmony and consistency. See 2A Sutherland, Statutes and Statutory Construction 343 (C. Sands, 4th ed. 1973).
[9] To ignore the facts as stated here is simply to reweigh the evidence and rejudge the credibility of the witnesses. This an appellate court cannot do. See Jones v. State (1978), Ind., 377 N.E.2d 1349.
[10] The law provides that the statute is tolled, inter alia, if a third person provides support "on behalf" of the alleged biological father. The facts of the instant case indicate the opposite: R.D.S.'s support was provided on his own behalf.
[11] On facts nearly identical to those of this case, the same rationale was used to impose liability for support ("financial and moral obligations") in Burse v. Burse (1976), 48 Ohio App.2d 244, 356 N.E.2d 755.
[12] "In loco parentis" means "In the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities." Black's Law Dictionary 896 (4th ed. 1968). The concept in loco parentis is recognized in Ind. Code § 6-4.1-1-3(d). It provides that for inheritance tax purposes, if an in loco parentis relationship has existed for ten years, the child is to be treated as a natural child.
[13] The trial court specifically articulated its concern that many fathers in dissolution proceedings would use the allegation of non-biological paternity to attempt to relieve themselves of support obligations. The judge expressed interest in the rationale of Burse, supra note 11. Also commended to the trial court for consideration was Bailey v. Boyd (1877), 59 Ind. 292 ("If a woman marry, grossment ensient, it is the child of the husband ... in taking the mother he takes the child with her.").
[14] But see Ind. Code § 31-1-11.5-12 (child support awarded without regard to marital misconduct).
[15] It is because of the absence of fraud in a situation such as this one that the two types of cases have been treated separately. See generally 10 Am.Jur.2d, Bastards § 69 (1963 & Supp. 1979). In fact, some jurisdictions carry the distinction so far as to impose a conclusive presumption of legitimacy. Id. Despite the implication by the majority in discussing the first issue, the trial judge here did not determine that the presumption of legitimacy was not overcome; the court in fact ordered prior to trial that non-biological paternity was deemed proved. The judge based his decision solely on public-policy-oriented interpretation of the statute. See note 13 supra and accompanying text.