**Joe B. FAIRROW, Appellant**
**(Petitioner Below),**

v.

**Mary E. FAIRROW, Appellee**
**(Respondent Below).**

No. 49A02–8804–CV–00123.

Court of Appeals of Indiana,
Second District.

Sept. 13, 1989.

Maureen E. Gaddy, Gaddy & Gaddy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Pursuant to a Pre–Appeal Conference Order, the issue before us has been delineated as follows:

Whether the trial court erred in not terminating a prior order directing Joe B. Fairrow to pay child support, when the evidence disclosed that he could not be the child's father as alleged in his T.R. 60(B)(8) Motion.

The somewhat unusual circumstances of the case began with a dissolution decree of February 7, 1975, determining that Joseph D. Fairrow, born June 7, 1974, was a child born of the marriage between Joe and Mary E. Fairrow. Parentage of the child was not disputed during the dissolution proceedings nor, Joe states, did he have reason to believe that he was not Joseph's biological father. The dissolution decree ordered Joe to pay child support.

Shortly after birth, Joseph was determined to have sickle cell trait. Thereafter, when the child was approximately 11 or 12 years of age, Mary communicated to Joe that the trait was adversely affecting Joseph's health. This led to testing of Joe in order to determine the source of Joseph's sickle cell trait. The results of that testing proved conclusively that Joe could not be the biological father.

As a result of this disclosure, Joe filed a Trial Rule 60(B)(8) Motion entitled Petition

to Terminate Support. It was denied without hearing, the court stating that it was not filed in a timely manner.[1] Thereafter Joe filed a Petition to Reconsider and requested a hearing. A hearing was granted and held, after which on December 14, 1987, the trial court stated that the Motion to Reconsider was overruled "thus overruling the petition to terminate support." Record at 38. Because no hearing was afforded previously, we consider the December 14, 1987, ruling to be the judgment which denied the T.R. 60 Motion.[2] From this ruling a timely Motion to Correct Errors was filed.

Joe points to that portion of T.R. 60 which provides relief if a judgment, though valid when entered, for equitable reasons should no longer have prospective application. T.R. 60(B)(7). It is in this regard that Joe asserts that he does not seek to bastardize the child nor to affect the determination of paternity other than as to his continuing duty of support.

■ We must observe that in order to avert a duty of support, prospective or otherwise, it is essential that it be determined that Joe is not Joseph's father. Therefore, the factual determination made in the dissolution decree must necessarily be overturned, vacated or ignored. We cannot, as suggested by Joe, leave the dissolution decree fully intact yet relieve him from the duty of support.

For this reason we necessarily view the Petition to Terminate Support as a T.R. 60 Motion seeking to set aside the paternity determination of the dissolution decree.

In order for Joe to be successful in this respect, it is necessary that the record show as a matter of law that the T.R. 60 Motion was filed within a "reasonable time" after the dissolution decree.

The trial court made no specific determination as to this issue but because it is accepted that Joe is not and could not have been Joseph's father, the only logical basis for denial of relief is the fact that the trial court felt it was without discretion to vacate the dissolution decree or that Joe had not used reasonable diligence to discover the true facts.

■ To the extent that Joe's argument asserts the inequity of continued application of the dissolution decree, it must be rejected. This cause for relief is contained in T.R. 60(B)(7) and is distinct from the cover-all provision of T.R. 60(B)(8). In order for relief to be granted under T.R. 60(B)(7), it must be shown that there has been a material change of circumstances since the judgment. *In re Marriage of Jones* (1979) 1st Dist., 180 Ind.App. 496, 389 N.E.2d 338. The requirement is not met here. There has been no *change* in circumstances. Rather, the present circumstances existed at the time of the dissolution decree but that fact was not known, at least by Joe. Accordingly, we hold that Joe is not entitled to relief under T.R. 60(B)(7) as separate and distinct from T.R. 60(B)(8).[3]

One aspect of Joe's argument would have us consider his Petition to Terminate Support not as a T.R. 60 Motion but as a Petition to Modify the dissolution decree based upon changed circumstances so substantial and continuing as to make the terms of the decree, i.e., as to support, unreasonable.

Although this construction of the procedural posture of the case has facial appeal, it is unpersuasive. We cannot relieve Joe under the guise of changed circumstances when the circumstance is clearly and sim-

---

1. The court's rationale was apparently premised upon a local trial rule requiring the filing of a Motion to Reconsider within fifteen days after a ruling upon a pleading or motion.

2. Discussions by the parties in their respective briefs allude to the Petitions to Reconsider as being T.R. 60 Motions or in the nature of T.R. 60 Motions. Under this scenario Mary maintains that no issue would be before this court because a Motion to Correct Errors was re-

quired to be filed within 60 days of the May 7, 1986, denial of the Petition to Terminate. However, we address the merits of the substantive issue because the Pre-Appeal Order has determined it to have been preserved.

3. Similarly the support provision may not be revoked pursuant to I.C. 31–1–11.5–17(a) (Burns Code Ed.Repl.1987) for it also requires a change in circumstances.

ply a factually erroneous premise for the earlier determination. The challenge must necessarily focus upon the original determination. That determination must either be set aside or it must remain. In the latter instance, the duty of support follows as a matter of law.

Accordingly, we are left with one issue. As posed in the Pre–Appeal Conference Order: May Joe challenge the dissolution determination after 11 years by a T.R. 60(B)(8) Motion?

In *In Re Paternity of Tompkins* (1988) 1st Dist.Ind.App., 518 N.E.2d 500, a judgment establishing paternity was set aside more than three years later. In *Tompkins,* unlike the case before us, the 1982 paternity judgment was premised upon a joint petition which was thereafter determined to be fraudulent on the part of both joint petitioners. Here, there is no evidence of fraud. Surmise as to the mental state and conduct of the mother of the child is without foundation.

Furthermore, the *Tompkins* court observed that there "neither support, maintenance, nor education are lacking or appear endangered." 518 N.E.2d at 503. The situation is quite to the contrary in the case before us. The matter of support is at the heart of this dispute.

Even if Mary could be shown to be guilty of fraud, the statute of limitations for fraud is six years. I.C. 34–1–2–1 (Burns Code Ed.Repl.1986). *See also* I.C. 31–1–11.5–17(a). Absent a situation involving affirmative concealment, the six year period begins to run when the fraud is perpetrated, not when it is discovered. *Forth v. Forth* (1980) 2d Dist.Ind.App., 409 N.E.2d 641; *see also Given v. Cappas* (1985) 3d Dist.Ind.App., 486 N.E.2d 583, *trans. denied.*

The six year time frame may be given prima facie application to the "within a

reasonable time" requirement for the filing of a T.R. 60 Motion. Absent other facts or circumstances, the 11 year lapse is not a reasonable time. Joe has presented no other facts or circumstances. He relies solely upon the fact that he is not the biological father and upon his assertion that he had no reason to earlier question paternity.[4]

The general and virtually universally applied rule has been stated as follows:

"[I]t is universally recognized that a party who has litigated, or *who has had an opportunity to litigate,* a matter in a former action in a court of competent jurisdiction should not be permitted to litigate the issue again. The doctrine of res judicata, in order to prevent multiple litigation, holds that an existing final judgment rendered upon the merits, *without fraud* or *collusion,* by a court of competent jurisdiction, is conclusive of causes of action and of *facts or issues thereby litigated,* as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." Annot., 78 A.L. R.3d 846, 850 (1977) (emphasis supplied).

The parties agree that Joe is not the biological father of Joseph. Yet Mary contends through counsel that he is held to the duty of continuing support as if he were the father because he did not earlier challenge paternity.

Mary concedes that Indiana law, I.C. 31–1–11.5–2(c) (Burns Code Ed.Repl.1987), requires support only if the child is the child of *both* parties to the marriage. Appellee's Brief at 11. She also concedes that generally even though the duty of support may have arisen, if the obligor was not aware that he was not the natural parent of the child, he may be relieved of the support obligation. *Id.*

Notwithstanding, Mary argues that the cutting off of support, the status of legiti-

---

**4.** It is conceivable that at the time of the dissolution proceedings Joe was in possession of facts which should have placed him upon inquiry as to his actual status vis-a-vis the child. Be that as it may, Joe has not demonstrated otherwise. He has not proved fraud or an inability to challenge paternity at an earlier time. *See In*

*Re Marriage of Bradach* (1981) 4th Dist.Ind. App., 422 N.E.2d 342 (trial court erred in setting aside a portion of a dissolution decree when evidence was insufficient to demonstrate fraudulent misrepresentation or justifiable reliance upon representations made).

macy and the possibility of inheritance militates against application of the general rule. She says in effect that the passage of 11 or 12 years has irretrievably locked Joe into the support obligation and that for policy reasons the law must treat Joe and Joseph as father and son for all purposes. Mary states it thus:

"Although paternity and estoppel theories are important considerations, they nevertheless should be examined in light of the best interests of the child. The defenseless and vulnerable children are often the real or only victims of custody and support disputes and modifications. When the change in support is a termination of support, the chances of victimizing the children are virtually certain. The bastardization and disinheritance of the children are definite. While non-paternity is a valid concern, the totality of the circumstances and equities demand that, when non-paternity is discovered much later, an accommodation of interests be reached instead of the sudden cutting-off of support, legitimacy, and inheritance. Obviously the child will need support, which should be provided by the natural parent. However, the feasibility of that avenue may have been prejudiced by the time between initial support and discovery of non-paternity.

\* \* \* \* \* \*

At the very least in cases such as this one, support should not be terminated without assurance that another source is proximately available. Whether this could be handled by directing Mother to institute proceedings against the actual father, or by terminating support at some future date to provide a transitional period during which Mother can secure support from the father or another source. Of course, due regard must be given to the situation where a child has developed or maintained an emotional attachment to the non-parent through faithful visitation. In such a case, the child's welfare may require continued visitation and some protection from bastardization." Appellee's Brief at 12–13.

■ By conduct or circumstances, one who is not the biological father of a child may have become obligated to a continuing duty of support for that child. *R.D.S. v. S.L.S.* (1980) 2d Dist.Ind.App., 402 N.E.2d 30.

■ Although none of the posed circumstances of *R.D.S., supra,* 402 N.E.2d 30, are present here, it must be acknowledged that under some circumstances a duty of support may exist although the child is not the biological child of both parties to the marriage. We deem the present case to be in the latter category.

Over a period of eleven years support has been paid as if Joseph was Joe's natural son. As earlier noted, we may not hold that for purposes of legitimization, and inheritance, Joseph is the natural son but that for purposes of the support of that natural son, Joseph is not Joe's son. Accordingly, we hold that a T.R. 60 petition to be relieved from a support order in a dissolution decree is too late when filed eleven years after the judgment and after the financial support has become firmly established. *Toller v. Toller* (1978) 1st Dist., 176 Ind.App. 322, 375 N.E.2d 263 (T.R. 60 petition not timely when filed over two years after a dissolution decree ordering child support).

The judgment is affirmed.

SHIELDS, P.J., concurs.

BUCHANAN, J., dissents with separate opinion.

BUCHANAN, Judge, dissenting.

I do not agree with the majority's conclusion that no substantial change in circumstances has occurred. Joe's petition is, in my opinion, properly considered a petition to modify pursuant to Ind.Code 31–1–11.5–17(a) (1988).[1] Accordingly, Joe must establish that a substantial and continuing

---

1. IC 31–1–11.5–17(a) provides:
   "Provisions of an order with respect to child support ... may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

change in circumstances has occurred that makes the terms of the original order unreasonable. This he has done.

In order to determine whether a sufficient change in circumstances has occurred the totality of the circumstances must be considered. *Blickenstaff v. Blickenstaff* (1989), Ind.App., 539 N.E.2d 41; *McCallister v. McCallister* (1986), Ind.App., 488 N.E.2d 1147.

The trial court's and a party's, awareness, of the facts inevitably are a part of the totality of the circumstances. The trial court which entered the dissolution decree, and ordered the support, believed that Joseph was Joe's child. Had that belief been otherwise, Joe would not have been ordered to support Joseph. When the truth became known, the trial court's awareness changed. As that awareness was a *crucial* circumstance in the determination of Joe's support obligation, the change in that circumstance is substantial and continuing, so much so that the terms of the original order are now unreasonable.

The amount of time which elapsed between the original order and the petition to modify is irrelevant. The trial court has continuing jurisdiction, during the minority of the child, to make modification in the support order. *State ex rel. Werthman v. Superior Court of Marion County* (1983), Ind., 448 N.E.2d 680. A petition to *modify* has never been denied on the basis of being untimely.

I also cannot agree with the majority's conclusion that public policy considerations militate in support for continuing Joe's child support obligation. The touchstone of each of the policies discussed in *R.D.S. v. S.L.S.* (1980), Ind.App., 402 N.E.2d 30 (Buchanan, J. dissenting), was that a person's conduct could impose the duty to support a child *only if the person knew the child was not theirs.* My dissent in *R.D.S.* was based on the fact that R.D.S. *knew* the child was not his when he married S.L.S.; not that *someone* must support a child as a matter of public policy.

Joe's uncontested assertion that he had no reason to question Joseph's paternity cannot be dismissed as merely unproven.

The *stipulated* record shows that Mary knew Joe testified he had no reason to question Joseph's paternity, and she produced no evidence to rebut that contention. *Record* at 54. The only evidence before the court is that Joe did not know, and that he had no reason to believe, Joseph was not his child.

For approximately twelve years Joe supported a child *he believed to be his.* When he discovered the truth, he immediately began the legal procedures necessary to end that support. He never agreed to support another man's child.

To now impose the burden of support of another man's child upon Joe because he has previously supported a child pursuant to a court order, over a long period of time, *unaware* that the child was not his, is inequitable, even outrageous. No public policy dictates such a result, nor are there *any* cases to that effect. The net result of affirming the trial court's judgment is to unjustifiably fasten an albatross around Joe's neck.

Because Joe has demonstrated a substantial change in circumstances, which renders the terms of his original support order unreasonable, I would reverse the trial court's judgment.